**131** PEOPLES GAS & ELECTRIC.CO. *v.* CITY OF OSWEGO. No. 1.

Fourth Department, November, 1923. [Vol. 207

---

PEOPLES GAS AND ELECTRIC COMPANY OF OSWEGO, N. Y., Appellant, *v.* THE CITY OF OSWEGO and Others, Respondents. (Action No. 1.)

Fourth Department, November 14, 1923.

Municipal corporations — taxpayer's action to restrain city from releasing claims against State and accepting deed of canal lands from State — city of Oswego had claim against State for appropriation of water rights, buildings and lands — State built new dam and in settlement of city's claim proposed to deed strip of land to city to enable it to use power from new dam — city had right to flow of westerly half of river — decision in prior taxpayer's action is binding as to certain questions — agreement reserves to State right to enter and repair dam and does not constitute sale of canal lands within State Constitution, article 7, § 8 — State has power under Barge Canal Act, § 5, as amended, to quitclaim lands appropriated that are not necessary for canal purposes — release of claims as condition to grant does not invalidate transaction as audit under State Constitution, article 3, § 19 — deed of strip of land not inadequate consideration for release of claims.

In a taxpayer's action to restrain the city of Oswego from delivering to the State of New York a release of certain claims owned by the city arising out of several appropriations of water rights, buildings and lands by the State in the course of its improvement of the Oswego canal, and to restrain the city from accepting or recording a certain deed of land proposed to be given to it by the State in consideration for the release of the claims owned by the city, it appeared that in the course of the construction of the improvement of the Oswego canal it became necessary for the State to destroy a dam in the Oswego river in which the city had power rights; that a new dam site was selected by the State at a point where the city had acquired an option on property and the State appropriated a strip of land at that point sixty feet in width lying between the bulkhead of the dam as constructed and the land owned by the city; that the agreement between the city and the State provided for the conveyance of this strip to the city to enable it to make use of the water power of the dam in connection with its hydro-electric plant; that prior to the commencement of

this action another taxpayer's action had been tried involving some of the issues in this action relating to the title of the bed of the Oswego river and the right of the city to the flow of the river, in which it was held that the city had title to the west half of the bed of the river for a considerable distance above and below the old dam, and that the State had never formally appropriated any part of the westerly half of the bed of the river at the point in question.

*Held,* that the findings in the prior action, which was one of general interest to all the taxpayers of the city of Oswego, are conclusive not only upon the immediate parties thereto but they are likewise conclusive upon the plaintiff in the present action as a person in privity with the plaintiff therein.

The proposed agreement between the city of Oswego and the State of New York does not constitute a sale of canal lands within the meaning of section 8 of article 7 of the State Constitution, since adequate provision is made in the agreement for insuring to the State a full and adequate supply and depth of water for all canal purposes, with the right at any time to enter upon the dam and bulkhead for the purpose of making such changes, alterations or improvements as may be necessary for canal uses.

Furthermore, the Superintendent of Public Works with the approval of the Canal Board and upon such terms as it deems just, has authority under section 5 of the Barge Canal Act, as amended, to execute a quitclaim deed covering lands, structures or waters to the owner from whom the property in question was taken, his heirs, successors in interest or assigns, of any piece or parcel of land, structures or waters taken that shall be found not to be necessary for canal purposes, and it may impose such terms as may be deemed necessary, and, therefore, the city of Oswego, which is the successor in interest of the sixty-foot parcel which the State proposed to convey to it, may receive a quitclaim deed from the State for that parcel and the Canal Board has the power, as a condition to the conveyance, to require the city to release the State from all outstanding claims.

The proposed release by the city of all outstanding claims against the State does not invalidate the transaction as an audit within the meaning of section 19 of article 3 of the State Constitution.

If there was any failure by the State Engineer and Surveyor to comply with the requirements of section 5 of the Barge Canal Act as a preliminary to the approval by the Canal Board to the reconveyance, its action has been legalized by chapter 2 of the Laws of 1920 enacted for that express purpose.

The quitclaim deed proposed to be given by the State to the city of Oswego for the release of claims totaling more than $4,000,000 cannot be said to be so inadequate a consideration as to constitute a waste of public property, since the city could not avail itself of the water power of the dam unless it owned or had the right to use the sixty-foot strip between the bulkhead and the city's property, and furthermore, the claim by the city against the State, which has not been adjudicated, is not determinative of the value of the city's right to damages, and, therefore, there being no fraud or bad faith it cannot be held that the consideration is inadequate.

APPEAL by the plaintiff, Peoples Gas and Electric Company of Oswego, N. Y., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Oswego on the 17th day of March, 1923, upon the report of a referee appointed to hear and determine, dismissing the complaint upon the merits.

This action was brought by a taxpayer under section 51 of the General Municipal Law.

*Harry C. Mizen, Charles A. Collin* and *Elton H. Beals,* for the appellant.

*Francis E. Cullen* and *Joseph T. McCaffrey,* for the respondents.

Judgment affirmed, with costs, on opinion of WARNICK J. KERNAN, Esq., referee. Finding of fact contained in plaintiff's request No. 49 disapproved and reversed. The stay heretofore granted in the action is continued until the further order of the court.

All concur.

The following is the opinion of the referee:

KERNAN, Referee:

This is an action brought by plaintiff as a taxpayer of the city of Oswego, N. Y., against the city of Oswego, John Fitzgibbons as mayor, and various individuals constituting its water service commission, to permanently restrain the delivery by defendants to the State of New York of a release of certain claims owned by the city and growing out of several appropriations by the State in the course of its improvement of the Oswego canal and otherwise, and likewise from accepting or recording a certain deed proposed to be given to the city by the Canal Board of the State of New York. The reasons upon which the request for the injunction is founded will be best understood by a brief recital of the facts leading up to the litigation.

In 1911 work was commenced by the State of New York in connection with the building of what is known as dam No. 6 of the Oswego river, the work being incident to the improvement of the Oswego canal as provided by the Barge Canal Act, so called (Laws of 1903, chap. 147, as amd.), and the dam itself being completed in or about January, 1915. In the building of the dam it became necessary and there was destroyed by the State what will be termed the "Old High Dam," located for many years at an appreciable distance south of dam No. 6 in question, at the westerly end of which, through the medium of head gates, the city of Oswego and its predecessors in title were the owners and had been in the actual enjoyment, for many years, of power rights of concededly great value. The westerly end of dam No. 6 is located upon uplands appropriated from the Oswego Country Club but, prior to such appropriation and as a result of negotiations entered into by the city when the tentative site of the dam was first made known, an option had been given by the Oswego Country Club to the city of Oswego to purchase a parcel of land having a frontage of 500

feet on the Oswego river " to be selected by the Water Department of the City of Oswego at any point on said river front now owned by the Oswego Country Club * * * as may be reasonable and necessary for the purposed installing and maintaining a power plant or station with the right of ingress or egress to or from said premises;" and, after the appropriation by the State referred to, there was deeded by the country club to the city, under the option mentioned, a parcel of land including the most northerly 167 feet of river frontage appropriated as well as 333 feet of frontage just northerly thereof, the conveyance being made subject to the appropriation in question and the country club at the same time assigning to the city all its claims against the State growing out thereof. A claim for $1,002,000, founded upon such appropriation, was thereupon filed by the city which, with its claim of $3,150,500 for land, building and structures, and alleged destruction of riparian rights growing out of the destruction of the " Old High Dam," a claim of $80,000 founded upon the State's negligence resulting in damage to its buildings thereat, a claim of $6,600 for other lands appropriated, and a claim for $21,100 having to do with lands and the alleged destruction of riparian rights on the east side of the river, makes the aggregate of its claims existing against the State $4,260,200. Meanwhile, as a result of negotiations carried on by defendants with various State officials and bodies — it being the contention of the city that by virtue of the form of the State appropriations, as well as its ownership of the bed of the Oswego river, it is the owner of all surplus waters — a permit was granted by the Superintendent of Public Works to the Oswego Water Service Commission on March 9, 1916, revocable at will, " to construct and maintain two reinforced concrete or other suitable walls on the westerly side of the bulkheads at Oswego Canal Dam No. 6," its purpose being to enable the city, by means of a proposed power house to be constructed upon its own land, to avail itself of the surplus waters claimed. The land affected by the permit was a 60-foot strip lying between the bulkhead of the dam as constructed and lands owned by the city — being the most northerly 60 feet of the 167-foot strip appropriated from the country club and which the country club had thereafter deeded to the city, subject to such appropriation, as a part of the 500-foot strip covered by its option — and such permit remained effective until March 4, 1918, when it was revoked. On November 21, 1919, however, the permit was regranted in substantially the same terms — plans of the city's proposed power house development having been filed as a part of the city's first application therefor — and prior to such date, on April 2, 1919, it was certified by the State Engineer, acting in

**138** Peoples Gas & Electric Co. v. City of Oswego.   No. 1.

Fourth Department, November, 1923.   [Vol. 207

accordance with the provisions of chapter 147 of the Laws of 1903, as amended, that the 60-foot strip in question was no longer necessary, a map being filed as required containing an exact description of the parcel " to be released and reconveyed to the city of Oswego (successor in interest of the former owner thereof)," but excepting and reserving to the State the right at any time " to enter upon any part or portion of the above described premises and do and perform such work and erect and maintain without further compensation such temporary works or structures thereon as, in the judgment of the Superintendent of Public Works, * * * are necessary to the maintenance, repair and reconstruction of said dam and bulkhead and their appurtenances and appendages and to insure the complete and effective control, for navigation purposes, of the waters impounded by said dam."   On the same day, acting in reliance on such certificate, it was resolved by the Canal Board that the Superintendent of Public Works should be directed to execute and deliver to the city a quitclaim deed of the lands conveyed thereby as well as a quitclaim of " the right, title and interest, if any, of the State, in and to the use, at and below said dam, of one-half of the surplus waters of the Oswego river impounded by the said dam (i. e., one-half of the waters impounded by said dam over and above the amount of flow of water now or hereafter required for any and all canal uses and purposes, including the water which may be hereafter required for the operation of a second lock)," together with the right to draw such waters through the bulkhead gates of the dam, the city to execute and deliver in return a release of all its claims.   It is this exchange of deeds and release which the plaintiff seeks to prevent and the proposed exchange is attacked on various grounds.   It is alleged that it is in contravention of section 16 of the Barge Canal Act, as added by chapter 494 of the Laws of 1907,* which forbids the sale, lease or other disposition of the waters, surplus or otherwise, impounded by dam No. 6 until the improvement of the canals as contemplated by the act in question shall have been finally completed or thereafter until authorized by statute setting forth specific terms, conditions and restrictions governing the same, and that the improvement has neither been completed nor has the disposition been authorized by the required statute; that the dam was built for the purpose of impounding and storing water to be used for canal supply and for State purposes and any water power created is the property of the State; that the release of claims aggregating $4,260,200 based upon the unfounded right of the State to convey

---

*Amd. by Laws of 1919, chap. 38; in part repealed by Laws of 1921, chap. 579, §§ 3, 4.— [Rep.

the use of the waters, restricted as such use must be for the proper operation of the canals, renders the consideration inadequate and is a waste of public property; that it is without any consideration; and that the proposed quitclaim by the State constitutes a sale of canal lands and is prohibited by the Constitution.

At the outset the defendants plead as a bar the judgment in a certain action brought in the Supreme Court by Charles Carroll against the city of Oswego and others, decided in March, 1918, and the careful examination which the law requires of the record and proceedings therein, including the pleadings, the evidence submitted, the respective contentions of the parties, and the findings and opinion of the court (*Oklahoma* v. *Texas*, 256 U. S. 70, 86), justifies the conclusion that certain of the questions at issue in the instant case must be regarded as settled. And this is so whether it is regarded as constituting the same or a different cause of action. (*Doty* v. *Brown*, 4 N. Y. 71; *Southern Pacific R. R.* v. *United States*, 168 U. S. 1.)

Carroll was a taxpayer and his action in question was directed towards restraining the city, the mayor, and the commissioners of water service from issuing, selling or negotiating bonds in connection with a proposed power house to be constructed by the city for the development of power at dam No. 6 — it being alleged, as in this case, that " all the water rights and power rights " created thereby " belong to and are the property of the State," the city having no right, title or interest therein, and it being further alleged, amongst other objections, that the city's scheme of securing surplus waters in consideration of a release of its claims was " speculative and without adequate assurance of success " as the State was without power to dispose of the same. Upon the trial the question of the ownership of the bed and westerly bank of the Oswego river was litigated as well as of the waters impounded by the dam; much evidence was given bearing upon certain negotiations between the city and State officials relative to its construction and the destruction of the " Old High Dam " and which were almost coincident with the enactment of the Barge Canal Act; and it was expressly found by the referee, amongst other pertinent facts, in dismissing the case upon the merits, that the city had acquired title, subject to the rights of navigation, to the west half of the bed of the river for an appreciable distance above and below the dam; that the State had never formally appropriated any part of the bed westerly of the center thereof at the location in question; that the dam was constructed with openings at its westerly end suitable for the erection of a hydro-electric plant; that reinforcing bars and key ways were placed by the State on the northerly wall of the abut-

ment " for the purpose of enabling the said city of Oswego to connect its structures with the said dam when the same should be built;" that the city's plans for a power house had been submitted upon request of the Canal Board and had been approved by the Canal Board and by various State officials; that, prior to the construction of the Barge canal, the city owned a valuable water power on the westerly side of the river at the " Old High Dam," and " it was known by the Canal Board and State authorities" that the construction of dam No. 6 would destroy the same; that a member of the advisory board of consulting engineers appointed by the Governor, after consultation with Oswego city officials, had recommended that the city " secure a water frontage on said Oswego river from said Oswego Country Club down the river from said High Dam so as to permit the State to move its dam down stream, landing the west end of the dam on the city's property;" that, acting upon such advice and further negotiations and in good faith believing it had the right to construct an hydro-electric power plant at the westerly end of dam No. 6, moneys had been expended by the city in connection therewith; that a permit had been obtained from the Superintendent of Public Works for the erection of two required retaining walls across State lands; and that shortly after it became known that the work of construction of the Barge canal would necessitate the destruction of the " Old High Dam," negotiations had ensued between the city and the State, represented by the chairman of the board of consulting engineers of the Barge canal, the Superintendent of Public Works, and the State Engineer, which resulted in an understanding set forth at some length, the substance of which being that the city, acting upon the suggestion of the State officials, was to obtain an option upon the country club's property, the State officials to thereafter advise the city as to the exact location of the proposed new dam, and that the State would build in the westerly abutment power gates, sufficient in number and design to enable the city to utilize the entire normal flow of the river not needed for canal purposes, and to which the city might connect its structures by means of forebay walls extending from its power house across the intervening strip of land of approximately fifty or sixty feet in width which had been or was to be appropriated out of the land purchased by the city from the country club, in order that the city might develop and utilize the water power created by the head of said dam. It was further found that the State had " completed the said dam substantially in accordance with plans as to the design and layout of the abutment and head gates," the plans and designs being first approved and confirmed by resolution of the Canal Board, and, included

among the conclusions of law, is a finding that the city " by reason of its said ownership of the lands and bed of the river * * * has the right to use one-half of the surplus flow of the water of the Oswego river on the westerly side thereof which is or may be created by said barge canal dam;" that the city of Oswego, "by reason of its ownership as above found * * * has the lawful right to use all the water power that can be developed from the flow of the westerly half of the river at the westerly end of said Barge Canal Dam No. 6 and bulkhead by constructing at that place a hydro-electric plant;" and that " in view of the action taken by the State authorities as hereinbefore found, the said city of Oswego has the right * * * to affix its structures in constructing its said hydro-electric plant to the bulkhead of said Dam No. 6 on the westerly side of said Oswego River so as to develop and use the surplus waters of the westerly half of said river * * *."

The action being one of general interest to all the taxpayers of Oswego, these findings, and each of them, are conclusive not only upon the immediate parties thereto, but they are likewise conclusive upon the plaintiff in the present action as being a person in privity with the plaintiff therein. (23 Cyc. 1269; *Oklahoma* v. *Texas, supra; Ashton* v. *City of Rochester,* 133 N. Y. 187; *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122; *Sabin* v. *Sherman,* 28 Kan. 289; *Gallaher* v. *City of Moundsville,* 34 W. Va. 730; *Smith* v. *Swormstedt,* 16 How. [U. S.] 288, 302, 303; *Greenberg* v. *City of Chicago,* 256 Ill. 213; *Henderson County* v. *Henderson Bridge Co.,* 116 Ky. 164, 179.) If, however, the city has the right to use one-half of the surplus waters created by the dam, then the State parts with nothing by its quitclaim, and section 16 of the Barge Canal Act, as added by chapter 494 of the Laws of 1907, manifestly has no application.

Neither can it be said that the proposed agreement constitutes a sale of canal lands within the meaning of section 8 of article 7 of the Constitution. Adequate provision is made for insuring to the State a full and adequate supply and depth of water for all canal purposes, with the right at any time to enter upon the dam and bulkhead for the purpose of making such changes, alterations or improvement in the canal structures as may be necessary for canal uses, and read in the light of such provisions the underlying reason for the constitutional provision against the sale or other disposition of our canals is served. (*Sweet* v. *City of Syracuse,* 129 N. Y. 316; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Walsh,* 211 id. 90, 96.) By the Barge Canal Act (§ 5, as amd.)* it is enacted

---

* Amd. by Laws of 1909, chap. 244, and Laws of 1915, chap. 511.— [REP.

that in the event that any piece or parcel of land, structures or waters taken shall be found not to be necessary for canal purposes; the Superintendent of Public Works, with the approval of the Canal Board, and upon such terms as it deems just, shall have authority to execute a quitclaim deed covering the lands, structures or waters to the owner from whom the property in question was taken, his heirs, successors in interest or assigns; and the Superintendent of Public Works shall not deliver the deed " until such terms have been complied with." As the successor in interest, therefore, of the sixty-foot parcel which the State proposes to convey, it is within the power of the State to quitclaim the same to the city. It could authorize such conveyance without any terms, assuming, of course, that the approval of the Canal Board was not contingent thereon. The fact that the Canal Board, however, sees fit to require a release from the city of all outstanding claims against the State, as a condition of the conveyance, does not vitiate the transaction as an audit, within the meaning of section 19 of article 3 of the Constitution. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Walsh, supra.*) If there was any failure by the State Engineer and Surveyor to comply with the requirements of section 5 of the Barge Canal Act in question as a preliminary to the approval of the Canal Board to the reconveyance, its action has been legalized by Laws of 1920, chapter 2, enacted for such express purpose.

It is argued that if the city already has the right to use one-half of the surplus waters created by the dam — the title to the sixty-foot strip alone passing by the quitclaim from the State — there is such an inadequacy of consideration for the release by the city of its claims totaling $4,260,200 as to constitute a waste of public property. A naked right of user without the means of present enjoyment is not of any great advantage to the possessor and, after all is said, it is the conveyance of the sixty-foot strip in question and the acquiescence of the State, by quitclaim, in the city's claim to the surplus waters, which makes available to the city an immediate, reasonably assured and continued development of power. And even if it were otherwise, the amount for which a claim is filed is neither determinative of its value nor will the courts in the absence of a finding of fraud or bad faith, be quick to interfere with the broad discretion which is properly vested in the officials of a municipality. In the present instance, not only is the element of fraud and bad faith lacking but it is fair to assume, both from the length of the negotiations and the public discussion attending the referendum had in connection with the question of bonding for a power house, that the proposed agreement

with the State is the result of the careful and conscientious judgment which should characterize every municipal project.    The risks pointed out arising from the possible action of the State in the future are such risks as the city has the right to assume.

The complaint is dismissed upon the merits, with costs.    Findings may be prepared accordingly.