JOHN J. HALLERAN, Plaintiff, *v.* CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, January 11, 1928.

Municipal corporations — taxpayer's action to restrain city of New York and transit commission from continuing performance of " dual " subway contracts — complaint alleges waste of city's moneys, bad faith amounting to fraud, impossibility of performance, and that contracts are illegal — since contracts were legal when made, claim of waste does not afford any basis for relief — right to modify contract, to which municipality is party, is solely with contracting parties — allegations fail to show bad faith by city in refusing to modify contract — contracts drawn in accordance with authority granted by Legislature, are legal, and do not conflict with State Constitution — fact that contracts have not been signed by city clerk, does not affect their legality — complaint dismissed as to all defendants — complaint is further insufficient as to transit commission and board of transportation, since taxpayer's action does not lie against State officers, under General Municipal Law, § 51.

This is a taxpayer's action by which plaintiff seeks to restrain the city of New York, the board of estimate and apportionment thereof, the transit commission,

the board of transportation, and the companies operating the subways in the city of New York, from continuing the performance of the so-called "dual" subway contracts of March, 1913. The complaint alleges waste of the city's money by public officers, bad faith amounting to fraud in the refusal of the board of estimate and apportionment to modify the contracts so as to increase revenue, impossibility of performance by reason of the decreased purchasing power of the fare received, and that the contracts are illegal, being in violation of the State Constitution.

Since a city cannot claim that a contract which was legal when made becomes illegal because it turned out to be unprofitable, any more than a private individual can so claim, plaintiff's allegation of waste, based on the fact that the contracts were unsuccessful or unprofitable, or predicated on the performance of any act required by their terms, affords no basis for the relief which he seeks.

The right to modify a contract, to which a municipality is a party, lies with the contracting parties, and the action of a municipality and a private contracting party, in modifying their contract, is not open to attack by a taxpayer.

Contracts and commitments of municipalities and the modifications thereof are legislative functions with which the judiciary does not interfere when the act is within the legal power of the municipality. Consequently, bad faith must clearly appear in the pleading by a sufficient statement of fact to warrant interference, and in the absence of a single statement showing bad faith by the city in refusing to modify the contract, the acts of the city officials are not subject to review. Moreover, plaintiff, as a taxpayer, has no right to abrogate the contracts against the wishes of the contracting parties, since the complaint does not set out a cause of action where fraud in the making of the contract is alleged, but rather fraud or bad faith in performance; refusal to alter an unwise contract does not amount to a breach of contract.

The contract has not been rendered impossible of performance by reason of the fact of inadequacy of return to the contracting parties, since the claim of improvidence of a contract does not amount to one of impossibility of performance.

A further allegation in the complaint that the transit commission has no present power to compel a modification of the subway contracts, is no aid to plaintiff's contention that the contracts are impossible of performance since power to modify the contracts exists in the parties to them, if they see fit to do so.

The contracts are not illegal, since they were drawn in accordance with authority granted by the Legislature under the Rapid Transit Act (Laws of 1891, chap. 4, as amd.), the constitutionality of which has already been passed upon by the Court of Appeals. Furthermore, the "dual" subway contracts are within the power of the municipality, and in no way conflict with the provisions of the State Constitution.

The fact that the contracts have not been signed by the city clerk of the city of New York is immaterial, since no necessity for his signature existed.

The complaint should be dismissed as to all defendants, but it is further insufficient as to the transit commission and the board of transportation for, pursuant to section 51 of the General Municipal Law, a taxpayer's action does not lie against State officers.

MOTIONS by defendants for judgment on the pleadings dismissing the complaint on the ground that it fails to state a cause of action.

*Thomas Gilleran,* for the plaintiff.

*George P. Nicholson [Edgar J. Kohler* of counsel], for the defendants City of New York and Board of Estimate.

*Clarence M. Lewis,* for the defendant Transit Commission.

*George D. Yeomans,* for the defendants New York Rapid Transit Corporation and Brooklyn Manhattan Transit Corporation.

*William G. Fullen,* for the defendant Board of Transportation.

*James L. Quackenbush,* for the defendant Interborough Rapid Transit Corporation.

CALLAHAN, J. All the defendants herein move for judgment on the pleadings dismissing the complaint on the ground that it fails to state a cause of action. This is a taxpayer's action brought against the city of New York, the members of the board of estimate and apportionment thereof, the transit commission, the board of transportation, and against the companies operating the present subways in New York city, to restrain such defendants from continuing performance of the so-called " dual " subway contracts of March 19, 1913, known as contracts No. 3 and No. 4 of that date.

The complaint, after stating the identities of the parties and the jurisdictional facts, sets forth the making of the said contracts and an outline of the terms thereof, including the sums to be contributed by the city and the companies in each case, the disposition of receipts, and the agreement that not more than a five-cent fare was to be charged by the operating companies. The complaint thereafter relates the building of the subways and the amount of city and company contributions thereto down to June 30, 1926. It then states: That in April of 1921, an emergency having arisen, the transit commission were " directed " (meaning presumably by the statutes adopted by the Legislature shortly prior thereto) to present a plan of readjustment for operation of all transit lines, in the city of New York, to bring about the unification of said lines, improvement of services, and securing of adequate return from operation; that said transit commission, having the power to modify the dual subway contracts, duly submitted an outline of a plan of readjustment to the defendant board of estimate and apportionment in 1921, 1922 and 1923, and called for co-operation in respect to the emergency and conditions then existing and the pressing necessities of the transit situation, but such co-operation was not given, and the rejection of submitted contracts by said board of estimate and apportionment without any assigned good reason, or because of the hostility to the transit commission, was in fact bad faith amounting to fraud, and prevented the building of new subways which were needed, and prevented the realization of revenue, income or profits from the existing subways. The complaint then pleads: That the operation of the subways has resulted in a failure to meet the operating companies' expenses, causing cumulative deficits to be

Supreme Court, January, 1928.            [Vol. 132

created, and that the city's carrying charges on interest and sinking fund have not been received by the city from the operation of the subways; that such condition will continue in the future, and it will be impossible to pay any of the interest or carrying charges of the city on its investment, and that at the end of the agreement the property to be returned to the city will be of little value; that included in the deductions made by the operating companies are large rentals for existing railroads not owned by the city, and that such rentals are preferentials and in effect guaranteed by the city out of returns from operation of the subways; that the operating companies have offered to modify the contracts so that sufficient income might be realized to make the subways self-sustaining, but that the defendant the board of estimate and apportionment, acting for the city, has refused to confer or co-operate to that end, in bad faith amounting to fraud.

The complaint then alleges: That the transit commission nor any other commission has not now any power to modify the contracts in respect to fares, and that the only revenue under the contracts is realized from the five-cent fare charged; that as appears from the financial statements set out in the complaint, the revenues from a five-cent fare are inadequate to pay the deductions set out in the contract, and that a continuation of a five-cent fare has made the contract impossible of performance, and the city of New York cannot receive any return for interest or amortization on its gift or investment; that such impossibility of performance is due largely to the reduced purchasing power of the fare specified in the contracts; that the board of estimate and apportionment in its failure to agree to an increase of revenue under the contracts is acting in bad faith amounting to fraud, in that its conduct prevents the realization by the city of money legally due and payable to it, thereby causing illegal waste of the city's funds. The plaintiff then proceeds to charge that the contracts are in violation of article 8, section 10, of the Constitution of the State of New York, in that city's money and credit are being loaned to private companies and are being inseparably mingled with private funds, and the operating companies have possession, use and control of the city's money in the handling of revenues as provided in the contracts. The plaintiff then pleads that he has notified the defendant the board of estimate and apportionment to cease further transactions under the contracts, to stop giving the money or credit of the city to the companies, and to stop wasting the city's funds, but that said board has continued to so act in bad faith amounting to fraud and to the public injury. A further allegation that the contracts involved herein were not signed by the city clerk as required by law concludes the pleading

other than the prayer for relief, which asks for an injunction restraining the continuance of performance of the contracts. The dual subway contracts, being public documents, are made part of the complaint.

A review of this pleading shows that plaintiff alleges four grounds for relief, to wit: (1) Waste of the city's money by public officers; (2) that the board of estimate and apportionment in the past and at present has been guilty of bad faith amounting to fraud in refusing to modify the contracts so as to increase revenue; (3) that the contracts have become impossible of performance by reason of the decreased purchasing power of the fare received, and (4) that the contracts of March 13, 1913, are illegal, being in violation of the State Constitution.

As to the first ground: It will be noted that each of the matters complained of as constituting " waste " were things done in carrying out the contracts in accordance with their terms or conditions, or which were the result of such performance. To have the performance of a contract in accordance with its terms result in " waste " would mean that the contract itself was improvident when made. Such improvidence would not amount to waste in law and could afford no basis for the abrogation of a contract. The law favors the performance of contracts, and when a municipality enters into an agreement of the class here involved it does so in its private rather than its sovereign capacity and would have no more right, even through the agency of a vigilant taxpayer, to avoid its contractual obligations than would a private individual so contracting. That is, a city could not claim that a contract, which was legal when made, became an illegal one because it turned out an unprofitable one, any more than a private individual could so claim. As I will later point out, these contracts were legal when made, and, therefore, no claim of " waste " because they were unsuccessful or unprofitable, or based on the performance of any act required by the terms of the contract, would afford any basis for the relief sought herein.

As to the second ground: The right to modify a contract to which a municipality is a party, as in any other case, is solely with the contracting parties. The action of a municipality and a private contracting party in modifying their contract has been held not to be open to attack by a taxpayer. (*Phelps* v. *Logan Natural Gas & Fuel Co.*, 101 Ohio St. 144.) For plaintiff's benefit we will assume, however, solely for argument, that the courts would take adequate action to compel a municipality to modify an improvident contract where the other contracting parties agree to a modification to make it profitable and where bad faith or fraud on the city's part was the sole ground for its refusal to so modify it. In such a case it

would have to appear, however, under well-recognized rules of law, that the refusal to modify did not involve in any way a question of the discretion of the city's official representatives. Such a situation would preclude a finding of bad faith and would clearly preclude judicial interference.

Contracts and commitments of municipalities and the modifications thereof are classified as legislative functions. The judicial branch of the government does not interfere therewith when the act is within the legal power of the municipality. It appears on the face of the present complaint that any modification of the dual subway contracts to eliminate what plaintiff calls "waste" would be a modification calling for an increase in the rate of the fare to be charged by the operating companies. The very fact that such an increase is involved clearly establishes that the matter is one of municipal policy or discretion. These dual subway contracts have many years to run. The city's conduct in retaining the present fare, with the alleged resultant imposition of the burden of supporting the utility out of the general tax fund rather than from operating income, may be wise or unwise, but it is not for the courts to determine that question. The question of modification of the present contracts might depend on the wisdom of the continuance of the operating companies' rights to the present preferentials, which they might not be willing to surrender, or because of a dispute over any one or more of the many elements involved in the agreement between the parties. It might even depend on city policies entirely extraneous of these contracts, such as the city's desire to recapture these subway lines for linking with other proposed subways, or other matters of a public aspect. There are so many matters herein affording the basis of the possible exercise of discretion that bad faith must clearly appear in the pleading by a sufficient statement of fact. What is there in this complaint that constitutes an allegation of fact showing bad faith by the city in refusing to modify the contract? Not a single statement that I can find, unless it might be said to be set forth in the paragraph to the effect that in 1921, 1922 and 1923 the board of estimate and apportionment rejected a proposed modified contract because of hostility to the transit commission. The rules of construction of pleadings would have to be very liberally applied to give the construction of a sufficient claim of bad faith to such allegations. But assuming it did so allege, there is no statement of what such proposed contract, assuming its existence, contained. Was it one beneficial to the city or otherwise? In the absence of allegations showing that this alleged contract was acceded to by the operating companies, and that there was no construction that could be placed upon it other

than that it was for the city's benefit, could there be any claim that its rejection, even though promoted by pique, was injurious to the city and an abuse of discretion? The complaint is barren on the subject of the contents of such alleged contract. In fact, all of the allegations of bad faith in this pleading are wholly conclusions. All of the foregoing has been said on the assumption that if the pleading established bad faith by the city in a refusal to modify the contract, the acts of city officials might be subject to some review by the courts. The court does this for the reason that if the complaint might be strengthened by amendment, leave to so amend might be given.

It is clear, however, that even with sufficient allegations of such bad faith the plaintiff here, a taxpayer, could have no right to the relief he now seeks; that is, to abrogate the contracts against the wishes of the contracting parties. Such action might possibly work an irreparable injury to the contracting parties, the investors in the operating companies' securities and the riding public. The operating companies, which are party defendants, join in opposition to any such relief by their motions to dismiss the complaint. They agree that these contracts may not be terminated at the request of a taxpayer of the city for the reasons asserted. This is not a case where fraud in the making of a contract is alleged, but rather fraud or bad faith in performance. If such fraud or bad faith existed, it would merely constitute possible grounds for asserting a breach of the contract by the injured contracting party, but surely would afford no right to a representative of the party guilty of the breach to avoid further performance. Refusal to alter an unwise contract would not amount to even a breach of the contract.

Considering the third ground advanced, to wit, that the contract has been rendered impossible of performance, it becomes apparent that the only impossibility claimed is inadequacy of return to the contracting parties. The basis of a claim for frustration or impossibility of performance of a contract, such as the usual claim of *vis major* or termination or destruction of the subject-matter of the contract, is not set up here. The plaintiff cites the case of *Kinzer Const. Co.* v. *State* (125 N. Y. Supp. 46) as authority for the rule that the development of conditions entirely beyond the contemplation of the parties at the time the contract was entered into amounts to an occurrence that makes a contract impossible of performance. This rule, if it exists, has no application to the facts here, nor could it be urged by a taxpayer to prevent further performance of a contract against the will of the contracting parties who, by their willingness to continue it, show that it is not impossible of performance. The claim of improvidence of a contract does not amount to

one of impossiblity of performance. In the case of *Columbus R., Power & Light Co.* v. *City of Columbus* (249 U. S. 399) it was held that where, because of change in economic conditions brought on by the World War, the operation of a public utility by a private company at a rate fixed under a franchise had become temporarily unprofitable, this did not amount to an impossibility of performance so as to permit the company to cancel its contract and surrender its franchise. How could it be said then, in the present case, that a taxpayer might urge a similar change in economic conditions which made it unprofitable for the city to continue as the basis of a claim of impossibility of performance against the will of the contracting parties?

The further allegations in the complaint that the transit commission has no present power to compel a modification of the subway contracts, nor has any other public body, does not aid plaintiff's contention that the contracts are impossible of performance. Power to modify the contracts exists in the parties to them if they see fit to do so. That there is no superpower to compel the city to so modify them against the will of the city's duly constituted officers is a strange reason for claiming that the contracts cannot be performed.

We are thus brought to a consideration of the fourth ground urged, to wit, that the contracts are illegal. These contracts were drawn in accordance with authority granted by the Legislature in the Rapid Transit Act (Laws of 1891, chap. 4, as amd.). The question of the constitutionality of that act was passed on by the Court of Appeals in *Admiral Realty Co.* v. *City of New York* (206 N. Y. 110). That was a taxpayer's action to restrain the city from entering into the proposed dual subway contracts. Plaintiff contends that between the date of the decision, June 27, 1912, and the date of execution, March 19, 1913, there were many changes in the contracts, for which reason that decision is not *stare decisis*. No material variance between the proposed contracts passed on in the *Admiral Realty Co.* case and those now before the court are specifically pointed out herein. The objections raised here as to lending of public credit, etc., were all considered and passed on by the Court of Appeals in that case. The principles of law laid down in the *Admiral Realty Co.* case are certainly controlling where applicable to the present facts. The plaintiff's counsel in his brief goes into a lengthy exposition of matters brought out in legislative investigations and elsewhere to show that the *Admiral Realty Co.* case was a " rigged " case, in that both counsel were in the pay of the present operating companies. He also cites at length from learned and vigorous dissenting opinions of members of the courts deciding the cases. The rule of *stare decisis* is in no way rendered

less applicable because of these circumstances.   It would be unfortunate if we could consider such extraneous facts as the motive of the parties or their attorneys on the question as to whether we chose to follow a prior decision of a court of last resort, especially when hundreds of thousands of dollars have been invested on the strength of such prior determination.   As a matter of fact, the proposed dual subway contracts after they were modified were again before the courts in *Hopper* v. *Willcox* (155 App. Div. 213).   The latter action was brought by a taxpayer who attempted to raise the present claim as to the inapplicability of the decision of the Court of Appeals in *Admiral Realty Co.* v. *City of New York* (*supra*).   The Appellate Division, First Department, nevertheless unanimously upheld the constitutionality of the contracts, stating: " The contracts, therefore, as now proposed to be executed, are substantially the contracts as originally prepared and presented to the Court of Appeals, and that were the subject of the prior hearing."

The " prior hearing " referred to the *Admiral Realty Co.* case.

The dual subway contracts are in my opinion by the force of judicial decision within the power of the municipality, and by like decision the Rapid Transit Act, under which they were drawn, in no way conflicts with the provisions of the Constitution.

It is true, as defendants contend herein, that a taxpayer's action is *res adjudicata* on all issues raised or that might have been raised therein.   (*Peoples Gas & Electric Co.* v. *City of Oswego, No. 1,* 207 App. Div. 134, 141; affd., 238 N. Y. 606.)   But the question as to whether the judgment in the *Admiral Realty Co.* case can be said to be *res adjudicata* is not in my opinion before me on the present motion, for that is a plea to be raised by defense or a motion directly urging such ground, and this motion raises solely the consideration of the complaint on its face.

The last ground urged by plaintiff, that the contracts should have been signed by the city clerk, is without weight, in that, could it now be raised, it would be necessary to hold that, as the former Public Service Commission acted on behalf of the city in executing these contracts by special legislative authority, no necessity for such action by the city clerk existed.   For the reasons above stated the complaint fails to state a cause of action as to any of the defendants.   It is further insufficient as to the transit commission and the board of transportation for the reason that a taxpayer's action will not lie against State officers.   (Gen. Mun. Law, § 51; *Schieffelin* v. *Komfort,* 212 N. Y. 520.)

The motions of the various defendants are granted; complaint dismissed as to all defendants.   Settle orders on notice.