Michael Catalano, J.
Plaintiffs move to serve an amended complaint.
Defendants move to dismiss the amended complaint, upon the grounds of insufficiency and res judicata.
This is the third complaint seeking the same relief from the Supreme Court in Erie County.
The first complaint (includes “petition”; CPLR 105, subd. [b]) dated August 6, 1969, named Jerome T. Murphy (herein called “ Jerome ”), a taxpayer as petitioner for judgment under CPLR article 78 in the nature of “prohibition” against the County Legislature of the County of Erie (herein called “ County Legislature ”) and B. John Tutuska, as County Executive of the County of Erie (herein called “Tutuska”), as *956 respondents, later adding Kenford Company, Inc. (herein called “Kenford”) and The Dome Stadium, Inc., (herein called “ Dome ”), as inter veno r s-r e spondents, alleged in effect that on June 17, 1969, the County Legislature entered into a secret contract to enter into a certain management contract of a proposed domed stadium; that on June 18, 1969, the County Legislature adopted a resolution providing that Kenford would guarantee a lease whereby it would pay $63,750,000 over 40 years to the County of Erie (herein called “ County ”), but if the terms of this lease could not be agreed to within three months, then a 20-year management contract would be awarded to Kenford which would receive “up to 15% of said management; ” (so in original) that on August 4, 1969, a contract was submitted for adoption by the County Legislature; that on August 5, 1969, the County Legislature adopted this management contract and submitted it to Tutuska for his signature in behalf of the County; that such action was without legal authority, being arbitrary and capricious and fraudulent; wherefore, an order was sought nullifying this management contract and resolution, and permanently staying the execution of said management contract.
The first complaint was dismissed as insufficient by a decision of Mr. Justice Walter J. Mahoney of this court on August 21, 1969, and “ without prejudice ” by a final judgment dated October 1, 1969.
The second complaint dated August 12, 1969, named Bradley J. Hurd, (herein called “ Hurd ”) plaintiff “as a taxpayer of the County of Erie,” and the County, the County Legislature, Tutuska, Kenford and Dome defendants, alleging, in effect, that on June 18, 1969 and August 5, 1969, the County Legislature adopted certain resolutions, pursuant to which on August 8, 1969, Tutuska accepted in form an agreement with Kenford and Dome to be executed after three months’ failure to agree upon a lease for the domed stadium; that the management of the stadium is public work that must be contracted only with the lowest bidder; wherefore, a judgment was demanded annulling said resolutions of June 18, 1969 and August 5, 1969 and said management contract, and restraining the execution of said management contract.
The second complaint (Hurd’s) was dismissed as insufficient by a decision of Mr. Justice James O. Moore of this court on September 15,1969, stating in part; that the courts do not pass upon legislative policy or administrative discretion; that by chapter 252 of the Laws of 1968, effective May 14, 1968, the New York State Legislature (herein called “ State Legislature ”) passed an act specifically authorizing the County to *957 enter into this type of management contract; that the court must assume that legislative discretion has been properly exercised without resorting to competitive bidding. This Hurd complaint was “dismissed on the merits for failure to state a cause of action ” by final judgment dated October 1, 1969.
The third complaint now before this court adds nothing substantially different from the other two dismissed by Justices Mahoney and Moore. It merely adds more details, complaining of specific terms of the management contract, then demands judgment enjoining the County, the County Legislature and Tutuska from spending public money upon this domed stadium, or from allowing any person other than an employee of the County to manage it or from allowing defendants to execute this management contract; and demands judgment nullifying the County Legislature’s said resolutions of June 18, 1969 and August 5, 1969.
The plaintiffs, Francis X. Murphy (herein called “ Francis,” not related in any way to Jerome T. Murphy, petitioner in the first complaint or petition) and Peter B. Carr (herein called “ Carr ”) bring these actions against the same five defendants named in the second complaint, namely, the County, the County Legislature, Tutuska, Kenford and Dome, all of which, excluding the County, were respondents in the first complaint. The plaintiffs herein are lawyers duly practicing as such in this State, appearing pro se, as taxpayers. Thus, all three complaints contain so-called “ taxpayers’ actions ”, seeking basically the same relief from the State Supreme Court.
The third complaint, being an “ amended complaint ”, alleges for a first cause of action (called “ Count One ”) in effect, that on June 18, 1969, the County Legislature adopted a resolution approved by Tutuska for the construction of a domed staduim, to be leased for 40 years to Kenford, or if not agreed upon, to agree to retain Kenford to manage it; that on August 8, 1969, Tutuska and Kenford entered into such a management agreement, being unconstitutional and a public waste and not for a proper County purpose; for a second cause of action (“ Count II”) in effect, that this management contract is an unlawful delegation to a private person of management of public property; that such is a waste of County money; for a third cause of action (“ Count III ”) alleges, in effect, that such a surrender of poAver of taxation is a waste of public property; that for a fourth cause of action (“ Count IV ”); that such is a joint venture between the County and a private corporation and it is not a proper County purpose; that for a fifth cause of action (“ Count V ”); that since the contract provides Kenford with *958 office, storage and parking space to be used in fulfilling Ken-ford’s obligations therein, such is a gift or loan and so a waste of County property; that for a sixth canse of action (“ Count VI ”); that since this contract may be assigned by Kenford to Dome it is not in accordance with the June 18, 1969 resolution, constituting a waste of public money and property; that for a seventh cause of action (“ Count VII ”); that since the contract binds the County to provide services and materials to Kenford for one month, then be paid for at a later time, such is an illegal loan of money or property; that for an eighth canse of action (“ Count VIII ”); that since the contract appoints Dome to be sole agent to negotiate major contracts for 11% of the gross revenue and to negotiate purely private contracts for 89% to 96% of certain revenues, such is a waste of public property; that for a ninth cause of action (“ Count IX ”); that the contract with Kenford and Dome being contrary to the June 18, 1969 resolution was a negligent or willful wrong by the parties thereto; that for a tenth cause of action (“ Count X ”); that the dome stadium will not be self-supporting pursuant to the June 18, 1969 resolution and the management contract, thus, will be a waste of taxpayers’ money; that for an eleventh cause of action, (“Count XI”); that the changes in the management contract as provided for in the June 18, 1969 resolution are completely detrimental to the interests of the County of Erie, grossly negligent and in bad faith resulting in waste of property of the County of Erie.
These 11 alleged causes of action are not separate and distinct but so interrelated as to be truly one cause of action, divided into 11 parts, all seeking to enjoin the County, the County Legislature and Tutuska from acting pursuant to the June 18, 1969 resolution and to have said resolution and a resolution of August 5, 1969 declared null and void.
August 18, 1969, this action was commenced by the service of summons and complaint. September 8, 1969, defendants served notices of motion on plaintiffs for dismissal of the complaint because of insufficiency. September 16, 1969, the return date, plaintiffs requested an adjournment to September 19,1969, after September 15,1969 when Mr. Justice Moobe filed his memorandum decision in the Kurd taxpayers ’ action. September 26, 1969 plaintiffs’ motion to serve an amended complaint and defendants’ motion to dismiss it for insufficiency and res judicata were argued and submitted to the court for decision.
CPLR 3014 provides, in part: 1 ‘ Separate causes of action or defenses shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses *959 may be stated alternately or hypothetically.” In granting amendments, ‘ ‘ Leave shall be freely given upon such terms as may be just including the granting of costs and continuances.” (CPLR 3025, subd. [b].)
‘ ‘ At any time before service of the responsive pleading is required, a party may move on one or more of the grounds set forth in subdivision (a), and no more than one such motion shall be permitted. ” (CPLR 3211, subd. [e].) These grounds include res judicata (Ibid., subd. [a], par. 5) and insufficiency. (Ibid., subd. [a], par. 7) “ Service of * * * an answer * 5 v shall be made within twenty days after service of the amended * * * pleading to which it responds.” (CPLR 3025, subd. [d].)
On September 26,1969, the return day of both motions herein, plaintiffs’ motion to serve the amended complaint was granted, then argument was heard to dismiss it for insufficiency and res judicata. Certainly defendants ’ motion against this amended complaint was timely.
In America the sovereign powers reside in the people who have delegated certain of these powers to the Federal Government and have prohibited some to the States reserving all others to the States respectively, or to themselves. (See U. S. Const., 9th and 10th Amdts.; N. Y. Const., art. I, § 14.)
In New York State, the legislative power is vested in the Senate and Assembly (N. Y. Const., art. III, § 1), the executive power is vested in the Governor (Ibid., art. IV, § 1), but the judicial power is not expressly vested in any one court. (Ibid., art. VI, § 1.)
The New York Supreme Court has general original jurisdiction in law and equity (Ibid., art. VI, § 7, subd. a) including new classes of actions and proceedings created by the Legislature (Ibid., subd. c).
Generally, our Legislature has plenary power for all purposes of civil government (People ex rel. Simon v. Bradley, 207 N. Y. 592) except as constitutionally limited. The Legislature may control by direct legislation the local, public affairs of any civil division of the State ■(People v. Tweed, 63 N. Y. 202, 207) and the property of a municipal corporation is held subject to the legislative power. (Darlington v. New York, 31 N. Y. 164, 204.)
Each branch of government should be free from interference, in the discharge of its duties, by either of the others. (People ex rel. Burby v. Howland, 155 N. Y. 270, 282.)
The State Legislature has the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only on request of two thirds *960 of the total membership of its legislative body or on request of its chief executive officer concurred in by a majority of such membership. (N. Y. Const., art. IX, § 2, subd. [b], par. [2], adopted Nov. 5, 1963, eff. Jan. 1, 1964.)
The State Legislature enacted chapter 729 of the Laws of 1961, entitled 4 4 An act to amend the administrative code of the city of New York in relation to financing the construction of a stadium to be erected by the city of New York in Flushing Meadow park, and authorizing, in aid of such financing, the renting of such stadium and exemption from down payment requirements approved, then effective April 22, 1961. Thus, the Shea Stadium in New York City was born.
Chapter 252 of the Laws of 1968 was copied verbatim in substantial parts therefrom.
The State Legislature enacted chapter 252 of the Laws of 1968, entitled 4 4 Ah act relating to the construction and financing of a stadium by the county of Erie and authorizing, in aid of such financing, the leasing of such stadium and exemption from current funds requirements ’ ’, approved and effective May 14, 1968, passed on home rule request. Chapter 252 provides, in part, that44 Notwithstanding the provisions of any other law, general, special, or local, the county of Erie, acting by the county executive, with the approval of the Erie county legislature, is hereby authorized and empowered from time to time to enter into contracts, leases # * * or other authorizations, to any person or persons, upon such terms and conditions, for such consideration and for such term of duration as may be agreed upon by the county and such person or persons, whereby * * * such person or persons are granted the right, to use * * * the whole or any part of a stadium * * * hereby authorized to be constructed Such use shall be for the 44 purpose or purposes as shall furnish to * * * the people of the county of Erie, recreation, entertainment, amusement, education, enlightenment, cultural enrichment, and development or betterment and advancement and improvement of trade, industry, commerce, agriculture, or science, including professional, semi-professional, amateur, collegiate, scholastic, and juvenile sports and athletic events, theatrical, artistic, musical or other entertainment * * * and/or * * * for any business, industrial, agricultural, scientific, or commercial purpose which aids in the financing of the construction and operation of such stadium. * * * It is hereby declared that all of the purposes referred to * * * are in the public interest and for the benefit of the people of the county and the improvement of their health, education, welfare, recreation, well-being and prosperity, *961 for the promotion of competitive sports for yonth and the prevention of juvenile delinquency, and for the advancement and improvement of trade, industry, science, agriculture, and commerce, and are hereby declared to be public purposes for which county moneys may be appropriated and expended. ’ ’ These 30 public purposes far outweigh the few private purposes involved.
This court must assume that legislative discretion has been properly exercised. (Kittinger v. Buffalo Traction Co., 160 N. Y. 377, 389. See, also, Gaynor v. Rockefeller, 15 N Y 2d 120, 134.)
The County Legislature is the legislative and governing body of Erie County (Erie County Charter [as amd. by Local Laws, 1967, No. 1 of County of Erie], art. II, § 201; Municipal Home Buie Law, art. 4, Part 1 [The County Charter Law], § 35, eff. Jan. 1, 1964); it has power to levy taxes and incur indebtedness (Erie County Charter, art. II, § 202, subd. a); to make such studies and investigations as it deems to be in the best interest of the county, and in connection therewith to obtain professional and technical advice (Ibid., subd. h).
June 17,1969, Kenford made a written offer to accept a resolution by the County Legislature containing the terms stated in the June 18,1969 resolution of said Legislature.
The resolution of June 18, 1969 of the County Legislature provides, in effect, that Kenford or assigns shall donate to the County 178 acres of land within the Lancaster-Kenford site area, previously offered to the County for $566,638, about 156.5 acres of which are within the stadium site area and about 21.7 acres outside. The County will acquire the remaining portion of the stadium site area, will construct domed stadium facilities comparable to the Houston Astrodome and access roadways; construction to commence in 12 months following acceptance of this resolution by Kenford. The County and Ken-ford shall negotiate a lease for 40 years, whereby the County shall receive as its consideration revenues of not less than $63,750,000, consisting of all tax revenues received by the County and generated by operations on the stadium site area plus increased real property taxes resulting from increased assessments and other tax revenues received by the County and realized from or generated by the peripheral lands and development thereof, plus a cash rental from lessee, not less than these total sums in each year: First 5 years, $1,000,000 each year; years 6-10, $1,250,000 each year; years 11-25, $1,500,000 each year; years 26-40, $2,000,000 each year. In the event that a lease cannot be agreed upon within three months after the County receives preliminary drawings, plans, specifications and cost *962 estimates, then the County and Kenford shall enter into a 20-year management contract whereby the County shall receive all gross revenues from the operation of the stadium facilities and pay all expenses of operation and maintenance thereof, and Kenford shall provide management services for a fee to be agreed upon. Kenford to provide consultation services during planning and construction, and to assure rent under such lease, Kenford shall furnish to the County appropriate evidence of capitalization of $2,000,000 or a proper bond to equal that amount. Kenford will have Judge Roy M. Hofheinz and Edward H. Cotrell as principal stockholders. Judge Hofheinz will be chief executive officer.
The Buffalo Chamber of Commerce has estimated that the construction of a domed stadium in this County will produce millions of dollars in money spent here as well as thousands of jobs for the County’s inhabitants.
It is generally known that most large cities or counties in this country have constructed or plan to construct large stadiums. This court should not nullify the County’s action which is in tune with the times, if it can be legally sustained.
“A taxpayer’s action is res judicata on all issues raised or which could have been raised therein. The general principle by which, if a bona fide suit in equity is brought and litigated by one as the representative of a class, the judgment or decree binds the entire class as if all were before the court, applies to taxpayers’ actions.” (21 Carmody-Wait 2d, New York Practice, § 128.57.) (See, also, Halleran v. City of New York, 132 Misc. 73, 81, affd. 226 App. Div. 785; Peoples Gas & Elec. Co. v. City of Oswego, 207 App. Div. 134, 141, affd. 238 N. Y. 606; 52 Am. Jur. [1st ed.], Taxpayers’ Actions, § 38; 18 McQuillin, Municipal Corporations [3d ed., 1963], § 52.50.) “ A judgment rendered against several taxpayers, who were claiming that a county board acted without authority, has been held to bar a subsequent suit by different taxpayers.” (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5011.35; Campbell v. Nassau County, 274 App. Div. 929.)
The second complaint {Hurd) is res judicata on the issue raised that competitive bidding was not required in the County Legislature’s resolutions of June 18, 1969 and August 5, 1969 and in the unexecuted management contract. That was the only issue raised. (See Mr. Justice Moore’s decision.)
Here, the third complaint omits the issue of competitive bidding, but raises the issues of management agreement, waste, non-county purpose, surrender of taxing power, joint venture, *963 gift or loan, negligent or willful wrong, bad faith. All of these 10 issues could have been raised in the second complaint.
Thus, the third complaint is barred by res judicata, as well as stare decisis, the dismissal of second complaint being a precedent for barring the present claims. The first (Jerome) complaint was dismissed by a judgment “ without prejudice ” and the second complaint {Kurd) was dismissed by a judgment “ on the merits for failure to state a cause of action ”.
The decision of Mr. Justice Moore in the Kurd action is a bar to the present case and it is conclusive to any matters actually litigated or possibly litigated because the two actions are so similar that a different holding herein would destroy rights or interests established in the Kurd case. (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304, 306-307. Followed: Statter v. Statter, 2 N Y 2d 668, 673.)
Article III of the management contract (approved by County Legislature’s Resolution, August 5, 1969) provides, in part: “ The County shall provide the corporation (Dome) with reasonable and suitable office and storage space within the stadium and adequate parking space nearby, without cost, for use by the corporation in the fulfillment of its obligations hereunder.”
Thus, this contract expressly obliges Dome to use the facilities for only public purposes described therein. Incidental benefits to a private person do not invalidate legislation predominately in the public interest.
Section 218 of the County Law provides in part: “ Chambers shall be provided for any resident judge of the court of appeals or justice of the supreme court and may be provided for the county judge, surrogate, and family court judge. The board of supervisors [County Legislature of Erie County] shall provide necessary and suitable furnishings together with light, heat, telephone, law books, periodicals and such other furniture, supplies or equipment as may be necessary for such courts to properly function.” (As amd. by L. 1951, ch. 652, § 6.)
Office, storage and parking space are provided by the County to the various branches and departments of the Erie County government: Legislative Branch, County Legislature (Erie County Charter, art. II); Executive Branch, County Executive (Ibid., art. Ill); Departments of Finance (Ibid., art. IV), Health (Ibid., art. V), Law (Ibid., art. VI), Parks and Recreation (Ibid., art. VII), etc.; Comptroller (Ibid., art. XII), County Clerk (Ibid., art. XIII), District Attorney (Ibid., art. XIV), Sheriff (Ibid., art. XV).
Such space provided for public purposes for use by elected or appointed public officials, public employees or public contrae *964 tors is entirely proper and desirable to promote efficiency in public service.
Plaintiffs argue that the County may not retain any person to do any work on a public project unless he is a direct county employee. The reductio ad absurdum of such argument would be that only county employees may construct public projects, a monstrous doctrine at best.
Section 51 of the General Municipal Law provides in part: “ an action may be maintained * * * to prevent waste or injury to * * * any property, funds or estate of such county ”. (L. 1909, ch. 29, as amd.) “ The terms ‘ waste ’ and 1 injury ’ used in this statute comprehended only illegal, wrongful or dishonest official acts, and were not intended to subject the official action of boards or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunals.” (Tolcott v. City of Buffalo, 125 N. Y. 280, 286. See, also, Kittinger v. Buffalo Traction Co., 160 N. Y. 377, supra; Altschul v. Ludwig, 216 N. Y. 459; 795 Fifth Ave. Corp. v. City of New York, 15 N Y 2d 221.)
Here, no illegal, wrongful or dishonest official acts exist.
No law requires a public work as a domed stadium to be self-supporting. Chapter 252 of the Laws of 1968 provides, in section 3, that the construction of the stadium is a public purpose ‘ ‘ for which indebtedness may be contracted and serial bonds and bond anticipation notes of the County of Erie may be issued ”.
New York Constitution (art. VIII, § 2) provides, in part: “No county * * * shall contract any indebtedness except for county * * * purposes”.
The enabling act of 1968, chapter 252 is, therefore, an express declaration by the State Legislature that the building of a domed stadium is a county purpose.
“ The power of taxation shall never be surrendered, suspended or contracted away”. (N. Y. Const., art. XVI, § 1.) ‘ ‘ A contract for a pre-established limit on tax liability, whether it be considered as conferring £ tax exemption ’ or ‘ tax savings or tax relief by any other label, is clearly barred by this sweeping prohibition.” (Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293, 308-309; app. dsmd. 368 U. S. 12.)
Plaintiffs contend that the following portion of the rental clause contained in the Resolution Contract of June 18, 1969, to be included, in substance, in a 40-year lease of the stadium site area (if, as and when executed) is unconstitutional and void, *965 to wit: Paragraph 2, (b) in part, “the revenues so received by the County to be comprised of (i) all tax revenues received by the County and generated by operations on the stadium site area, plus (ii) increased real property taxes (except for delinquent school district, town or village taxes and except for any other non-county taxes collected on behalf of a municipal or public corporation, capital improvement district or public authority) resulting from increased assessments and other tax revenues received by the County and realized from or generated by the peripheral lands and development thereof (peripheral lands shall mean those lands presently owned, contracted for or hereafter acquired by Edward H. Cottrell or Kenford, and located within the area of the Town of Lancaster outlined in red on the attached map Schedule B) ”.
This rental clause continues: “and plus (iii) a rental payment in cash from the lessee.” The cash rental shall be paid annually, sufficient to make the total revenues received by the County not less than a stated sum, starting at $1,000,000 increasing gradually to $2,000,000 each year.
Here, the County has not surrendered, suspended or contracted away its power of taxation, nor did it limit the tax liability of anyone. All taxes due or to become due go to the County which will receive the full yearly rental from the lessee. A benefit or profit realized by the lessee will not per se invalidate the lease to be negotiated.
Chief Justice Taft of the Supreme Court of Ohio, speaking for a unanimous court, in 1968 said: “We conclude that a charter municipality may construct a stadium which is designed to accommodate large crowds at athletic and other exhibitions and may rent that stadium to private persons who will provide such exhibitions; that the municipality may do so even though such private persons will derive profits from providing those exhibitions; that, in connection with the construction and operation of such a stadium, a municipality may acquire land and devote it to automobile parking and derive a profit from doing so; and that, as an incident to the construction and operation of such stadium, a municipality may construct and maintain a scoreboard and derive revenue from the sale of advertising space thereon.” (Bazell v. City of Cincinnati, 13 Ohio St. 2d 63, 70 [1968], app. dsmd. 391 U. S. 601.)
Here, the rental arrangement between the County and lessee would not be objectionable.
Also, if a lease should be agreed upon and executed, which seems most unlikely since the management contract is agreed upon and is ready for execution shortly, the receipt of a profit *966 by the lessee is proper provided this profit does not directly or indirectly involve the power of taxation that shall never be surrendered, suspended or contracted away. A lease executed containing said rental clause numbered 2 (b) (i) and (ii) of the Resolution Contract would not be void. However, this lease in ' final agreed form is not before this court at this time.
A joint venture is a partnership which is an association of two or more persons to carry on as co-owners a business for profit. (Partnership Law, § 10. See, also, Napoli v. Domnitch, 34 Misc 2d 237, mod. on other grounds 18 A D 2d 707, affd. 14 N Y 2d 508; Mitler v. Friedeberg, 32 Misc 2d 78.) The municipality must be the sole owner of the property in which it invests its public funds; therefore, there can be no union of public and private funds or credit, nor of that which is produced by such funds or credit. (Alter v. City of Cincinnati, 56 Ohio St. 47.)
Here, however, the County is or will be the sole owner of the stadium. No private fund or credit is involved. Kenford’s gift to the County of 178 acres of land of which the County will be the sole owner is not improper. No joint venture exists between the County and any other person.
The New York Constitution (art. VIII, § 1) provides, in part: “ No county * * * shall give or loan any money or property to or in aid of any individual, or private corporation ’
The County will construct and own the stadium, and will own the 244 or more acres of land upon which it will be situated. The judiciary has no concern whatever with the wisdom of the proposed contracts. (Admired Realty Co. v. City of New York, 206 N. Y. 110, 125.)
Roy Hofheinz (herein called “ Hofheinz ”), the chief executive officer of Kenford, was quoted in Sports’ Illustrated magazine, February 17, 1969, as saying: “ ‘ The next domed stadium will cost four times what it cost Harris County to build the Astrodome, ’ Hofheinz says. ‘ The rising costs of land, construction and borrowed money now make it impossible to build a domed stadium that can pay for itself out of its own revenue. The city that builds one will be undertaking a huge public subsidy of six or seven million dollars annually, ’ Hofheinz, of course, would be happy if his gilt-edge tourist attraction remained the only domed stadium in the land.”
This statement, if true and if applicable to the proposed Erie County Stadium, is not evidence of negligence, fraud or other willful wrong of the defendants herein. As early as February, 1969, Hofheinz was not a party to any of the questioned documents or acts under consideration. The costs of everything are climbing; that does not mean that it is wrong to buy. In pass- *967 Lag, it might be noted that the editorial comment inferred that Hofheinz was speaking with tongue in cheek because he would ‘ ‘ be happy if his gilt-edge tourist attraction remained the only domed stadium in the land. ’ ’
Since May 14, 1968 when the State Legislature passed chapter 252, the enabling act herein, the subject of a domed stadium and the modus operandi of obtaining one for Erie County were daily comment in the streets, homes, offices, factories, press, air. The taxpayers were articulate and concerned. The public has been heard. Notice of each debate in the County Legislature, each public act pro or con, have reached the eyes and ears of those who walk or run.
Be it by geodesic design, air-supported roof, rigid-dome plan, or a “ standard for the world,” the die has been cast. This court cannot change it at this time. It is for the legislative and executive branches of government to proceed.
Plaintiffs’ motion to serve an amended complaint is granted. Defendants ’ motion to dismiss the amended complaint is granted on the merits. No motion costs.