## MISSISSIPPI POWER CO. v. CITY OF STARKVILLE et al.

District Court, N. D. Mississippi, E. D.
Nov. 17, 1932.

Wilbourn, Miller & Wilbourn, of Meridian, Miss., Eaton & Eaton, of Gulfport, Miss., Magruder, Walker & Magruder and Will E. Ward, all of Starkville, Miss., for plaintiff.

Daniel & Greene, of Starkville, Miss., for defendants.

John D. Greene, Jr., of Starkville, Miss., for defendant City of Starkville.

G. Odie Daniel, of Starkville, Miss., for defendant Fairbanks, Morse & Co.

### Findings of Fact.

COX, District Judge.

In 1925 the city of Starkville was the owner of and was operating a municipal light and water plant and distribution system. This it was authorized to do by the law of Mississippi and its charter. Some time during the year 1925, negotiations were begun between the city of Starkville and the Mississippi Power Company, a Maine corporation, looking to the purchase by the power company from the city of the city's light plant and distribution system, and the negotiations finally, on the 14th day of March, 1925, culminated in a sale of said light plant and distribution system by the city to the power company by warranty deed. At the same time, and as a part of the same transaction, the city granted to the power company a franchise for a period of twenty-five years authorizing the power company to engage in the business of furnishing electric power to the citizens of the city of Starkville. The power company contracted to pay and did pay to the city of Starkville for said warranty deed and franchise the sum of $70,000 in cash. In addition the power company agreed to furnish the city electricity for its street lighting system for one year from the date of the contract of purchase free of cost to the city. This provision of the contract the power company fully performed. There was also a provision in the contract of sale which obligated the power company to furnish to its patrons in the city of Starkville hydro-electric power, which was to come from the hydro-electric system of the Alabama Power Company; and in carrying out this provision of the contract the power company acquired rights of way, erected high-power lines, etc., for a distance of approximately fifty miles from a point near Sulligent, Ala., to the city of Starkville. This was done at a cost of approximately $200,000. The mayor and board of aldermen of the city of Starkville and the citizens of Starkville generally knew that this line must be built to carry out the terms of the contract and no complaint is made that the cost thereof was in any way excessive.

The city of Starkville acted within its lawful and proper powers in making the sale to the power company and the entire transaction was lawful and binding on both parties to the contract.

The power company expended approximately $100,000 in extensions to and betterment of the distribution system which it had acquired from the city, and in 1926, upon the completion of its high-power lines into the city of Starkville, began to supply its patrons there, including the city of Starkville, with hydro-electric energy and has continued so to do and has in all things carried out its contract with the city.

Shortly after the purchase of the Starkville properties, the power company secured a

franchise to operate in Aberdeen, Miss., a city of approximately the same size as Starkville lying to the east of Starkville, and the high-power line connecting Starkville with the hydro-electric system of the Alabama Power Company was constructed to run through the city of Aberdeen and is used to supply it with electric power. Some time after the high-power line was constructed into Starkville, it was extended to the southwest to serve other cities and towns. The extra load placed on the line from the Alabama Power Company's hydro-electric system to Starkville caused by the extension necessitated additional construction and expense.

It is difficult to say just what part of the entire expense should be allocated to the Starkville distribution; but as this is not a rate case exact figures are not necessary, and it is sufficient to say that to carry out its contract with the city of Starkville and to carry on its business there the power company expended large sums of money, probably in excess of $250,000. These expenditures were made by the power company on the faith of and relying upon its warranty deed and franchise.

The city of Starkville was not authorized by law to grant an exclusive franchise, nor did it by any express stipulations in its contract of sale obligate itself to refrain from again operating a municipally owned light plant and entering into competition with the power company.

From the time of the contract of sale until late in the year 1930, in so far as the record discloses, the relationship between the power company on the one hand, and the city of Starkville and its citizens on the other hand, appears to have been entirely satisfactory. About this time certain citizens of Starkville, feeling that the city needed additional sources of revenue to help meet its taxation problems, began to discuss a municipal light plant, and this discussion soon grew into a pronounced agitation for such a plant. As a result of this, contacts were made between the mayor and aldermen of the city and Fairbanks, Morse & Co., an Illinois corporation, whose business is largely that of the manufacture and sale of various types of oil-burning engines and who sell and install light plants using such engines for creation of electric power. Preliminary surveys were made by engineers employed by the city, and approximate costs of a municipal plant such as the mayor and board of aldermen thought was needed were ascertained, and an ordinance was passed by the mayor and board of aldermen proposing the issuance of $102,000 of bonds of the city of Starkville for the purpose of purchasing and installing a municipal light plant and distribution system and calling an election to ascertain the will of the qualified electors of the city thereon. There then ensued a heated campaign in which the power company sought to defeat the issuance of the bonds and Fairbanks, Morse & Co. joined in with the city officials in an effort to carry the election in favor of the issuance, being actuated therein by a desire to sell to the city its engines and equipment. A great deal of advertising was done in the local press by each of these groups, and in all of it there was more or less inaccuracy of the "booster" type, probably not harmful. Certain statements were made in advertisements in the local press signed by citizens of Starkville which, however, went beyond mere "booster" statements. One statement, particularly vicious, appeared just before the election in which the charge was made that the power company had sold, bartered, and given away its stock to prominent men in various communities in the state of Mississippi for the purpose of controlling them. This statement was false. The advertising cost of this was paid for by Fairbanks, Morse & Co. Its falsity was either known to those who made it or it was made with reckless disregard as to whether it was false or true. See issue of Starkville News of October 30, 1931, at page 12. The record clearly discloses that practically all of the advertisements published seeking to carry the election in favor of the issuance of bonds was paid for by Fairbanks, Morse & Co.; and a fair inference from the evidence is that Fairbanks, Morse & Co. knew the substance of these various published statements.

The election was held and resulted in a substantial majority in favor of the issuance of the bonds.

The registration books of the city were introduced in evidence, and it was agreed that these books were the registration books used in the election above referred to. Each of the two books of registration, so introduced, have clearly imprinted on the front of the outside cover or binder the words, "Registration Books of the City of Starkville, Miss." At the top of each page of these books is a caption or form of oath for electors which was clearly devised and intended by its originator for use in county, state, or district elections, and there were blank spaces left in this form to be filled out by the registrar to show the

voting precinct, district, etc. None of these blanks had been filled in. This was all the evidence introduced with reference to the method of registration.

Following the election there were the usual steps taken by the city of Starkville looking to plans and specifications, advertisements for bids, and the letting of contracts, and the contract in question here was let to Fairbanks, Morse & Co. Various attacks were made on the legality of this contract in the pleadings in this case; but in the view the court takes of the issues in this case it is unnecessary to state either findings of fact or conclusions of law on this particular issue.

The plans and specifications for the erection of the proposed municipal distribution system and the contract for the erection thereof are in evidence. There is also in evidence the opinion of the engineers testifying both for the plaintiff and the defendant. From this evidence I find that the erection of the proposed municipal distribution system would materially interfere with the use of the distribution system of the power company which they have acquired by warranty deed from the city, would materially increase the cost of operation thereof and would render the operation thereof materially more hazardous.

There is evidence on behalf of defendants that such a competing distribution system can be built without increasing the hazard of operation materially or materially increasing the cost. This is a question not necessary to pass on, as the court finds as a fact that the one now proposed does materially increase both hazard and cost of maintenance.

The court finds as a matter of fact that the amount involved in this suit, exclusive of interest, is more than $3,000.

### Conclusions of Law.

Upon a thorough investigation by solicitors of record for all parties in interest, no case has been presented to the court which covers the state of facts in this case and the cases have been of value to the court largely by reason of analogy to the questions here presented.

■ The public policy of the state of Mississippi, as evidenced by its legislation and the decisions of its courts, is undoubtedly one which looks with disfavor on any type of monopoly and encourages free and untrammeled competition. The question of whether the city of Starkville is estopped from competing with the Mississippi Power Company by maintaining a municipal light and power system and a sale of electric power to residents of the city of Starkville must be decided in the light of that pronounced public policy of the state. It is undoubtedly true that in Mississippi a municipality acting in its proprietary capacity, as the city of Starkville was acting here, can estop itself. This, however, can, in the judgment of this court, be done only on the clearest showing of the right to relief by the plaintiff in equity, and if the case be doubtful the doubt must be resolved in favor of the public. The case at bar is, to say the least, doubtful. Nowhere during the negotiations looking to the purchase of the properties in question from the city was the question ever raised, and the citizens and qualified electors of the city of Starkville never had opportunity to pass on in any election the question as to whether the city of Starkville was by its action in selling its power manufacturing and distribution system precluding itself from the electric power field for a period of twenty-five years. If this had been intended, a stipulation to this effect could and should have been put in the contract, as was done in the Walla Walla Case, 172 U. S. 1, 19 S. Ct. 77, 43 L. Ed. 341, and the citizens could have then made known their desires on an issue plain and unambiguous.

I therefore conclude that the power company, plaintiff here, is not entitled to an injunction restraining the city from issuing bonds for the erection of a power plant and distribution system.

■ This brings us to the question, brought out by the evidence, of the physical interference of the proposed municipal system with that of the power company, which was conveyed to it by the city by warranty deed. This question the power company is entitled to have settled under its prayer for general relief.

■ The distribution system, whether it be real, personal, or mixed property, was conveyed by general warranty. This general warranty included and carried with it the warranty of quiet enjoyment, and I conclude that this warranty executed by the city precludes it from doing anything in its proprietary capacity which would materially interfere with the use of this distribution system by the power company, and since I find as a matter of fact that the system proposed and contracted for would materially interfere with the use of the power company's system conveyed and warranted to it by the city,

would increase materially the hazard of its use, and materially increase the cost of its maintenance, I conclude that the power company is entitled to an injunction against the city and Fairbanks, Morse & Co. restraining them from carrying out the contract in question here.

I conclude that the evidence in the case is not sufficient to justify the court in holding that the registration of voters in the city of Starkville was unlawful and void.

I conclude that the action of Fairbanks, Morse & Co. in having actively participated in the publishing of false and misleading statements seeking to influence the result of the election, the outcome of which would determine whether or not it could have opportunity to sell its products to the city of Starkville, was unfair, inequitable, and made in an effort to interfere with the established business of plaintiff and its customers in the city of Starkville, and that this conduct is such as to warrant an injunction against it restraining it from entering any contract made possible by the result of said election. This court recognizes and respects the right of Fairbanks, Morse & Co. to engage in legitimate efforts to sell its products and to compete with the Mississippi Power Company or any other corporation or individual; but this competition must be based on a fair presentation of the matters at issue; and in equity and in good conscience this court cannot permit such conduct as the record discloses in this case to affect the established business relationships of third parties.

No evidence being introduced showing any effort generally on the part of Fairbanks, Morse & Co. to use unfair tactics in any other operation in Mississippi, the prayer of the bill that they be restrained generally will be denied.

The parties to this suit will each be taxed with any cost which may have accrued for the summoning and attendance of their respective witnesses. The general court cost will be taxed one-half against the plaintiff, Mississippi Power Company, and one-half against the defendants jointly.

Settle form of decree on ten days' notice.

The above statements of facts and conclusions of law of themselves answer the various objections to the introduction of testimony on which the court reserved ruling and also the motion made on behalf of defendants at the conclusion of the evidence of the plaintiff.