ELMER AHLQUIST AND ANOTHER v. COMMONWEALTH ELECTRIC COMPANY AND ANOTHER.
SAME v. CARL SWEDBERG AND ANOTHER.
SAME v. FAIRBANKS, MORSE & COMPANY AND ANOTHER.[1]

June 14, 1935.

Nos. 30,350, 30,351, 30,352.

[1]Reported in 261 N. W. 452.

See 194 Minn. 112, 259 N. W. 692.

*Junell, Driscoll, Fletcher, Dorsey & Barker, Kenneth M. Owen, Donald West, Halgren & Gillespie,* and *Olin & Butler,* for appellants.

*Kyle & Kyle, P. S. Olsen,* and *Poppenhusen, Johnston, Thompson & Cole,* for respondents.

HOLT, JUSTICE.

These three actions were brought by a citizen and resident voter of the village of Mora and a taxpayer corporation therein to set aside three contracts of the village for the construction of a municipally owned electric lighting and heating plant. One contract was with the Commonwealth Electric Company for a distribution system of the electric current; one with Carl Swedberg for the construction of the powerhouse; and one with Fairbanks, Morse & Company for the installation of the Diesel engine power plant for the generation of the electric current. In each suit the village of Mora was made a defendant with the contracting party. In the suits against the Commonwealth Electric Company and Carl Swedberg judgments of dismissal on the pleadings were entered on motion of defendants, and plaintiffs appeal from the judgment in each case. The suit against Fairbanks, Morse & Company was tried and findings made directing judgment of dismissal on the merits with costs and disbursements to defendants. From the order denying plaintiffs' motion for a new trial they appeal.

All the contracts were entered subject to the result of a village election called to determine whether or not the village should erect an electric light and heating plant and whether or not bonds for $40,000 should be issued for the payment of the distribution system and the powerhouse. The election was held and the propositions

for the construction of the plant and the issuing of the bonds carried. So the contracts became effective. The plaintiff Ahlquist herein contested the election. The district court held the election valid, and the decision was affirmed in this court. Ahlquist v. Village of Mora, 194 Minn. 112, 259 N. W. 692.

The complaints in the suits against the Commonwealth Electric Company and Carl Swedberg incorporated the allegations and charges of the pleadings of Ahlquist in the election contest case. The charges so incorporated not only included violation of the corrupt practices act in many specified particulars, but also in an amended paragraph charged that the proponents of the propositions submitted to the voters, including Fairbanks, Morse & Company, its officers and agents, and certain named members of the village council, previous to the election, by fraudulent connivance caused to be printed, published, and circulated among the voters of the village false statements and representations with reference to the Eastern Minnesota Power Corporation and its financial condition and with reference to the operation of electric light plants by other municipalities and the profit to be derived therefrom and the reduction of taxes caused thereby; that said proponents congregated near the polling place on the day of election and by threats and other improper means caused the voters to vote in favor of the propositions; that they threatened to cease all social and business relations with various voters in the village unless such voters would urge and vote in favor of the propositions; that said proponents fraudulently connived and offered reduction in rates and other favors to certain persons and corporations located in and about said village and offered jobs and positions to others in the village, all for the purpose of influencing voters in the exercise of their franchise and did thereby impede and prevent said voters from exercising their franchise fairly and freely, and therefore ask that the election be held invalid. The voter Ahlquist alleged ten definite specifications of wrongdoing against the proponents of the propositions submitted to a vote at the election. The court found them "unproved and untrue or immaterial" and ordered judgment that the election was legally called, held, and conducted and was a legal

election at which there were legally cast and counted 399 votes in favor of and 207 votes against establishing and erecting a lighting and heating plant in the village, and the proposition was legally carried and adopted. From the order denying the contestant Ahlquist's motion for a new trial an appeal was taken to this court. The order was affirmed, and upon remittitur judgment pursuant to the findings was entered August 18, 1934. The above facts appear from the pleadings. It also appears that there was no contest as to the validity of the election upon the proposition of the bond issue. It is true, the supplemental reply to the supplemental answer, while admitting the election contest to have resulted in favor of the contestee, denied knowledge or information of the entry of judgment thereon. But such denial should be taken as sham where one of the plaintiffs was the contestant and a copy of the judgment is made a part of the supplemental answer.

If we disregard the unusual practice of making the charges contained in the election contest a part of the complaints herein, then it certainly must be held that plaintiff Ahlquist is concluded by the judgment in the election contest, and all matters that were litigated or could have been litigated under the issues presented by the paragraphs upon which the election contest was predicated are *res judicata.* The question is whether the plaintiff Eastern Minnesota Power Corporation, a taxpayer of the village, is also concluded by the election contest judgment. We think it is. In the nature of things there cannot be successive contests as to the legality of a municipal election. If one voter contests, the contest must be considered as brought in behalf of all interested therein, so that once the election is adjudged valid and legal no voter or taxpayer in the municipality may again question the result. In Texas it has been held that an election contest is a proceeding *in rem,* and a judgment therein is binding on all the world. Bickers v. Lacy, 63 Tex. Civ. App. 574, 134 S. W. 763; Savage v. State (Tex. Civ. App.) 138 S. W. 211. The decision in Kaufer v. Ford, 100 Minn. 49, 53, 110 N. W. 364, 366, proceeds on the same principle where the court said:

"Any other rule in cases of this kind would enable every legal voter in the county by individual action to question the validity of proceedings for the removal of a county seat, and thus create interminable confusion and indefinite delay. * * * It follows that all questions going to the jurisdiction of the board of county commissioners to act upon the petition for the removal of the county seat were determined adversely to the contention of appellant by the judgment in the mandamus proceeding. That judgment is final, and cannot be attacked collaterally, and the questions there in issue and determined cannot be further litigated in this or any other action." Murphy v. County of Scott, 125 Minn. 461, 147 N. W. 447.

We are also of the opinion that our statute provides for contesting municipal elections and that no other remedy is available. In Weber v. Timlin, 37 Minn. 274, 34 N. W. 29, it was held:

"An injunction will not lie to restrain county commissioners from ordering an election for the removal of a county seat, for the statute providing a mode for contesting elections furnishes a full remedy."

In sustaining a demurrer to a complaint in an action brought to set aside a city election authorizing the issue of bonds to buy a water plant, the court, referring to the absence of allegations showing irregularities which materially affected the result, said:

"But, even if it were so alleged, we are not ready to concede that these questions can be raised, and the election set aside, in an action like this, while the statute gives a specific remedy for contesting the election." Janeway v. City of Duluth, 65 Minn. 292, 295, 68 N. W. 24, 25.

Our statute gives a specific remedy for contesting a municipal election such as the one here involved. 1 Mason Minn. St. 1927, § 488. It is a speedy and effective remedy, to be exercised within the time therein provided; if not, the legality of the election should be free from attack in the courts. The supreme court of North Dakota said, with reference to the remedy given a candidate for

contesting the election when his successful opponent violated the corrupt practices act:

"Hence there was a plain, speedy and adequate remedy at law available to the unsuccessful candidate, and an action in equity will not lie." Ransom County Farmers Press v. Lisbon Free Press, 49 N. D. 1165, 1177, 194 N. W. 892, 896.

Do plaintiffs allege any valid reason, aside from the alleged invalidity of the election, for setting aside the contracts of the village with the Commonwealth Electric Company and Swedberg? There is no allegation in any form which charges either defendant or the village council with any fraud or wrongdoing in the making of these contracts. No irregularity is alleged in letting the contracts. That each contained a provision that if the propositions to be submitted to the voters should not carry the contracts should be void is not urged as a ground for annulling them. So there is no allegation in the complaints upon which to base any relief to plaintiffs. Hence judgment on the pleadings was rightly granted.

In the action against Fairbanks, Morse & Company and the village, aside from the effect of the judgment in the election contest, the complaint charges the defendants therein with irregularity and wrongdoing in that the village wrongfully caused the specifications for the Diesel engines of the generating plant to be so drawn that Fairbanks, Morse & Company was practically the only bidder who could meet them; that the terms of the contract with Fairbanks, Morse & Company provide that during its life the village will only generate and use electric current manufactured by Diesel engines and will not sell or distribute electric current otherwise manufactured; that such provision is in fact a franchise during the life of the contract and "cannot be granted without the expression of the voters of" the village by a duly called election, and therefore the contract is illegal and void. No other grounds than those just stated, and those incorporated from the election contest, are alleged for annulling the contract. The last mentioned cause for annulling the contract, *viz.*, that it creates a franchise not authorized by vote of the electors, is not argued in the brief, and it is assumed that counsel realize the futility of predicating relief on that proposition.

Whether the specifications for the Diesel engines were so drawn as to exclude free and unrestricted bidding was a pure issue of fact. The trial court found upon ample evidence this charge unproved and not true. No manufacturer or seller of Diesel engines was called to testify that the specifications were such that he could not bid. Plaintiffs' expert admitted that any manufacturer of Diesel engines could supply engines according to the specifications, but maintained that it would cost more to do so than it would cost those whose equipment was better suited to build the engines specified. It appears that Diesel engines are not kept in stock for plants of this sort.

Plaintiffs make the point that the election contest judgment is not *res adjudicata* as to them. For the reason stated why it should be so considered in the Commonwealth Electric Company case and the Swedberg case, there is in the Fairbanks, Morse & Company case the additional ground that there is a finding that Ahlquist, plaintiff herein, carried on the election contest as the agent of plaintiff Eastern Minnesota Power Corporation in its behalf and at its expense. Under such circumstances, both plaintiffs are concluded as to the validity of the election. The findings herein also are that all the charges made in the ten specifications (originally eleven, but before the trial two were consolidated and modified) of the wrongful and unlawful acts charged against Fairbanks, Morse & Company in the election contest are unproved or immaterial. We think this finding must now be taken as sustained by the record.

Plaintiffs assert that before or at the time the contract was made Fairbanks, Morse & Company induced the village council to sign it upon the promise and agreement of the company to pay the expenses of the campaign for the election and any litigation to maintain the contract. No agreement of this sort was pleaded, but the court, over the objections of defendants, allowed questions to be put to witnesses tending to elicit information as to the existence of such an agreement; but nothing of any significance was brought out. In the reply brief plaintiffs urged error of the court in refusing to allow an amendment of the complaint on the trial so as to allege such a corrupt agreement. The record is that such re-

quest was made as to the complaints in the Commonwealth company and the Swedberg cases, but no motion was made to amend the complaint in the Fairbanks, Morse & Company case. However, the refusal to amend a pleading at the trial rarely is cause for a new trial. There was no abuse of judicial discretion in this instance. The brief also seeks to raise the point that the contract was intended to provide for the payment of the purchase price of the generating plant from its earnings, but that, in fact, it is so drawn that the earnings not only of the generating plant but of the powerhouse and distributing system—all three being necessary to produce income—go to paying for the Diesel engines. It is enough to say no such claim was asserted in the pleadings, nor was it in any manner raised during the trial.

By stipulation, the record in the election contest was received in evidence, to have the same effect as if the testimony therein contained, the rulings made, and the exceptions taken, had occurred at this trial. A great many errors assigned in the election contest are now assigned as ground for a new trial. Since it is now established that the election contest was conducted by plaintiff Ahlquist in behalf of plaintiff Eastern Minnesota Power ,Corporation, that the village was a party thereto, and that judgment has been entered adjudging the election valid, it must be assumed that the rulings in the election contest were correct. At any rate, the issues raised and litigated in the contest or which could have been there litigated are *res adjudicata* by the judgment rendered therein as to these parties. All the rulings in the election contest were presented or could have been presented for review upon the appeal from the order denying a new trial therein. We are now precluded from examining into the settled case in the election contest to consider any errors there assigned or now assigned on this appeal, even though such settled case was stipulated into this record.

Plaintiffs moved for amended findings. Since the finding determinative of the appeal, *viz.*, that every charge of wrongdoing or illegality in the letting and making of the contract involved on the part of defendants—the parties thereto—was unproved, is sustained by the evidence which properly is to be considered, it follows that

there was no error in the refusal to make the amended findings requested. No useful purpose would be served by referring to the very many authorities cited in plaintiffs' exhaustive briefs. They go to propositions not controverted by defendants. A cursory examination of such cases cited as Goodrich v. N. W. Tel. Exch. Co. 161 Minn. 106, 201 N. W. 290, and Mississippi Power Co. v. City of Starkville (D. C.) 4 F. Supp. 833, will show that they have no application to the questions of fact and law now open to review on this appeal.

The judgments and order are affirmed.

