L. W. REPSOLD AND OTHERS v. INDEPENDENT SCHOOL DISTRICT NO. 8 AND OTHERS.[1]

May 12, 1939.

No. 32,032.

[1]Reported in 285 N. W. 827.

*Fraser & Fraser* and *Frank Hopkins,* for appellants.
*Granger & Plemling* and *Allen & Allen,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order sustaining a demurrer to the complaint.

Plaintiffs are residents, voters, owners of real estate, and taxpayers within the city of Rochester and independent school district No. 8 in Olmsted county, Minnesota. They instituted this action in behalf of themselves and others similarly interested. Defendants are the school district and the members of its board of education. Desiring to make an addition to the school and having no funds for this purpose, they proposed to issue bonds for $400,000 and to obtain a like amount from the federal government. The board advertised for bids for bonds in the sum of $400,000. Plans and specifications for the improvement were prepared at the request of the board. Since the complaint is concerned chiefly with a certain election which was held to authorize issuance of bonds, the following averments pertinent thereto are set out verbatim:

"That on September 6, 1938, the said Board of Education proposed to, and purported to have decided to call a special election, and would attempt to call a special election of the voters of said school district for the purpose of voting on whether they should or should not issue bonds generally (not to the State of Minnesota), to raise four hundred thousand dollars ($400,000.00) for the purpose of construction of an addition to the Central School building, installing a heating, ventilation and plumbing to be placed therein, and equipping the same with apparatus and other school furniture

which proposed expense and building was to amount to over eight hundred thousand dollars ($800,000.00).

\* \* \* \* \*

"That the time purported to be set for said election was September, 27, 1938, between the hours of nine A. M. and seven P. M. of said day, but that the said school district did not call said election, and did not provide the machinery or the opportunity for the voters of said school district to vote upon said issue. That no voting place was established, and no time was set for the voting at any particular place, and that no judges of election were appointed to receive or canvass said votes and the same were never canvassed or the vote declared, and no attempted opportunity to allow the residents and voters outside of the City of Rochester who were within said school district to vote at said election; and they were not allowed to vote; and that voters of the City of Rochester, but not within said school district, were invited to and were allowed to vote, though they were not electors or voters within said school district.

"That said election was held on said date though not legally called, and certain of the voters of said district and outside of said district, voted to the extent of 3,394. That a large portion of the voters that voted were not residents of or voters within said school district, and the total vote was only about one-fourth of the voters in said school district. That it was claimed that 1,441 votes were against the issuing of said bonds and 1,953 votes were in favor of said bonds and the same was not a two-thirds majority of the voters voting in said election.

"That the said Board of Education did not give proper notice for the holding of said election, as required by law. That they prevented residents, property holders and voters in said district from voting, who had a legal right to vote and allowed those to vote who were not residents of said school district, to a large number.

"That the said Board of Education never canvassed said vote. That the Board of Education never declared the result of said vote. That no legal authority ever canvassed said vote or declared the result of said vote.

"That less than two-thirds of the votes cast at said election were in favor of the issuing of said bonds by said School Board for the erection of said school and improvement. That notwithstanding that the said vote for the issuing of said bonds was against the issuing of the same, the said Board of Education has given notice that they will, on the 17th day of October, 1938, sell four hundred thousand dollars ($400,000) worth of School District No. 8 bonds, for the purpose of putting up said construction.

"That the said School Board has no legal right to issue said bonds for construction of said school building or improvements. That said election was illegal and void. That the votes cast in favor of said proposition was obtained through fraud and deceit, and was not a proper or fair submission of the question before the electorate of said school district."

Plaintiffs seek (1) a judgment vacating the election; (2) an injunction restraining the issuance or sale of the bonds and the letting of contracts for the construction of the building; and (3) if bonds have been issued or contracts let, a decree canceling the same.

Defendants demurred to the complaint on the ground "that it does not state facts sufficient to constitute a cause of action." The trial court was of the opinion that plaintiffs, having failed to contest the election in accordance with the provisions of 1 Mason Minn. St. 1927, § 488, cannot now challenge the result thereof in the manner attempted. Its views are expressed in a memorandum attached to the order sustaining the demurrer. We quote:

"Defendants demur to that of the complaint alleging irregularities in the election on the ground that it is not the proper method of contesting the election. The legislature has provided a special method of contesting elections in Sec. 488, of Mason's Code, which requires prompt institution, early trial by the court, and expeditious appeal heard summarily by the Supreme Court. This is the exclusive remedy. Weber v. Timlin, 37 Minn. 274, 34 N. W. 29; Janeway v. City of Duluth, 65 Minn. 292, 68 N. W. 24; Ahlquist v. Commonwealth Electric Co. 194 Minn. 598, 261 N. W. 452.

"Plaintiffs seek to avoid the effect of this law by claiming that the irregularities in the election were so great that they nullified the election and as a result there was no election at all and consequently they are entitled to attack it by injunction or any other manner.

"Whether the irregularities be great or small the statutory method of contesting the election provides a complete, speedy and efficient remedy. No reason has been advanced for not utilizing it and there is every reason for using it.

"Elections are democracies substituted for violence in determining public questions. They are efficient only when they go into effect promptly and with finality. Long drawn out contests by ordinary actions at law or equity, working their way leisurely through court terms and followed by the delays attendant upon appeal or review would cause endless trouble and if occurring frequently would destroy much of the usefulness of elections.

"In the case of bond elections such a contest or threat of contest would prevent the sale of the bonds voted or the making of contracts until every possible action or appeal had either been exhausted or barred thus preventing advantage being taken of favorable money, labor or material market or collateral grants or gifts. The opposition would then have in its hands a weapon by which it could thwart the will of the voters and nullify the election for all practical purposes.

"The complaint obviously attempts to set up facts showing that the election was void on its face. Whether or not such a showing is made is questionable. This, however, is immaterial. The fact remains that an election of some sort was held and that 3,394 voters participated in it and bond buyers and builders and material men are about to enter into contracts with the school board on the strength of it. If it was in fact invalid the defendants should have been stopped from proceeding under it at once and not even permitted to spend public money in having bonds printed and prepared for sale. On the other hand if it was in fact valid the 3,394 voters were entitled to know the effect of their votes without unnecessary delay, and the public was entitled to whatever benefits might arise

from holding the election at that particular time whether it be favorable money market or building conditions or collateral gifts or grants or the early completion of the proposed building."

In our opinion, this view is not only in accord with the established principle that courts should be reluctant to interfere with political matters by granting equitable relief (see McClintock, Equity, § 161), but is also supported by reason and precedent. In Ahlquist v. Commonwealth Elec. Co. 194 Minn. 598, 603, 261 N. W. 452, 454, this court said:

"We are also of the opinion that our statute provides for contesting municipal elections and that no other remedy is available."

In sustaining a demurrer to the complaint in an action brought to set aside a city election authorizing the issuance of bonds to buy a water plant, referring to the absence of allegations showing irregularities which materially affected the result, this court in Janeway v. City of Duluth, 65 Minn. 292, 295, 68 N. W. 24, 25, said:

"But it is not alleged in what manner it [certain irregularities referred to in the complaint] affected the result. Neither is it averred that the irregularities changed the result of the election. But, if it were so alleged, we are not ready to concede that these questions can be raised, and the election set aside, in an action like this, while the statute gives a specific remedy for contesting the election."

In Weber v. Timlin, 37 Minn. 274, 34 N. W. 29, it was held:

"An injunction will not lie to restrain county commissioners from ordering an election for the removal of a county seat, for the statute providing a mode for contesting elections furnishes a full remedy."

Insofar as the Weber case held that an election under an unconstitutional statute cannot be enjoined, it has been overruled by Consolidated School Dist. No. 30 v. Christison, 167 Minn. 45, 208 N. W. 409. The reason for excepting such a case from the general rule lies in the fact that the statutory remedy for contesting elec-

tions presupposes that one has been held. Where the election has not been conducted and the statute under which it is to be held is void, needless expense can be saved by restraining those about to call the vote from so doing. In such instance the statutory remedy is not adequate, and equity may properly give relief. But in the case before us the "election" has been completed, and no constitutional question has been raised. The remedy provided by 1 Mason Minn. St. 1927, § 488, will, in situations of this type, provide a more speedy and effective means of contesting the validity of the election than any equity can offer. If not availed of within the time provided by statute, the election should be immune from attack.

The sole reason set out by the plaintiffs in support of their claim for relief is that the "election" was invalid. Therefore the demurrer was properly sustained.

Order appealed from is affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.