## Sica v. City of Philadelphia

*Cornelius C. O'Brien, Jr.,* for plaintiff.

*Jill A. Douthett,* for defendants, City and Redevelopment Authority.

*Steven A. Arbittier,* for defendant, Stofflet and Tillotson.

GOODHEART, *J.,* December 7, 1982 — This is an appeal from an order of this court of July 27, 1982, which dismissed plaintiffs' exceptions to findings and order of this court and entered judgment for defendants on such findings and order. On May 6, 1982, this court dismissed this cause of action on the basis of the doctrines of collateral estoppel and res judicata. This order was based upon this court's decision in Artis T. Ore, Inc., et al. v. City of Philadelphia, Redevelopment Authority of the City of Philadelphia and Stofflet & Tillotson. (April term,

1982, no. 2047) decided on April 22, 1982. No appeal was taken from the Ore case.

Plaintiffs, Theresa Sica and J. J. White, Inc. brought this action against the City of Philadelphia and the Redevelopment Authority of the City of Philadelphia to enjoin the award of a construction contract to Stofflet & Tillotson for Contract No. 6, Gallery II/J. C. Penney Project. Plaintiff Theresa Sica alleged that she was a taxpayer of the City of Philadelphia and brought this action on her own behalf and on behalf of all other taxpayers of the City of Philadelphia. Plaintiff Sica is a secretary in the office of Defendant J. J. White, Inc. Plaintiff J. J. White, Inc., a corporation located in Philadelphia, brought this action on behalf of itself (as a taxpayer of Philadelphia) and all other taxpayers of the City of Philadelphia. Plaintiff White is a contractor engaged in the construction business.

In late 1981, defendant Redevelopment Authority of the City of Philadelphia (RDA) sought bids for certain general building construction projects in connection with the redevelopment being carried on in an area of center-city Philadelphia known as the Market Street East Urban Renewal Area. Among the projects for which bids were being accepted was Contract No. 6 — general construction for Gallery II. The RDA furnished a Project Manual to those interested in bidding on Contract No. 6.

Among the RDA's policies, was a policy of encouraging and promoting the participation of Minority and Women's Business Enterprises in its contracting and procurement activities. In order to realize this goal, the RDA issued Special Provisions for Minority Business Enterprises (MBE) and Women's Business Enterprises (WBE). The RDA sought to attain goals of 25 percent MBE participation and five percent WBE participation in this contract. The

RDA issued Addendum No. 5, which required that a contractor bidding on Contract No. 6 submit either a Prime Contractor's Affidavit of Compliance (entitled Exhibit I) or an Affidavit of Prime Contractor's Request for Waiver (Exhibit II) from the RDA's policy of promoting the participation of Minority and Women's Business Enterprises. Bidders were instructed to specify the Minority Business Enterprises (MBE) and Women's Business Enterprises (WBE) with which they had contracted, setting forth the value of the work and the percentage of the project that such work represented.

Plaintiff White submitted a bid for Contract No. 6. Bids were also submitted by Intervening Defendant Stofflet & Tillotson of Glenside, Pennsylvania, and the Conduit and Foundation Corporation, Philadelphia, Pennsylvania, and Meehan, Weinman, Inc., Conshohocken, Pa., a joint venture (The Joint Venture). The bids received were as follows:

| Contractor | Amount of Bid |
|---|---|
| J. J. White | $14,284,000 |
| Meehan-Weinmann/Conduit (Joint Venture) | 12,575,000 |
| Stofflet & Tillotson | 12,324,000 |

Prior to the formal selection and award of the contract to. the lowest responsible bidder, suit was filed on April 15, 1982 by Artis Ore and the Conduit and Foundation Corp., which were joint venturers with Meehan-Weinmann. The action was brought as a taxpayer suit on behalf of all other taxpayers in the City of Philadelphia, and sought to enjoin the award of the contract to anyone other than Meehan-Weinmann/Conduit.

This court denied plaintiff Ore's request for relief on April 22, 1982. Furthermore, this court found that there was in fact a legally binding contract be-

tween Stofflet and Tillotson and Uniland Corporation[1] at the time of the submission of the bid.

The court further found that the failure of Stofflet and Tillotson to execute an Exhibit 1 was an inconsequential omission which was waivable by the Redevelopment Authority, which, in fact, was waived.

Further, the court found that the 13 percent minority business enterprise sub-contractors may be added to the fifteen percent participation by Uniland which is an MBE and therefore totaled 28 percent, which exceeded the minimum 25 percent requirement for contracts such as this.

No appeal was taken by plaintiffs and the RDA later formally awarded the contract to Stofflet and Tillotson as the lowest responsible bidder.

The instant action was brought two weeks after this court rejected the identical challenge by Ore. Plaintiffs in the instant case allege that the bids submitted by Stofflet & Tillotson and by the Joint Venture (Meehan-Weinmann) did not comply with the instructions to the bidders. On May 6, 1982, this court denied plaintiffs' motion for a preliminary injunction and dismissed the action on the ground that the court's decree in the Ore action bars this suit by the principles of collateral estoppel and res judicata. This court incorporated by reference, the entire record in the action brought by Ore against the same parties in this case.

Plaintiffs filed exceptions to this court's order of May 6, 1982 on May 14, 1982 and filed additional exceptions on June 10, 1982. In plaintiffs' brief in support of exceptions, filed on June 22, 1982, plaintiffs assert as the basis for their exceptions the following:

1. Uniland Corporation was a joint venturer with Stofflet & Tillotson.

(1) The dismissal of plaintiffs' complaint in the instant case based on the doctrines of collateral estoppel and res judicata and incorporating by reference in this action the record in the Ore case.

(2) [The] [f]inding in Ore that Stofflet & Tillotson met the required minority business enterprise at 25 percent on Gallery no. 6 contract with the Redevelopment Authority.

(3) [The] [f]inding in Ore that the failure of Stofflet & Tillotson to execute Exhibit I was waivable by the Redevelopment Authority.

(Exhibit I is entitled Affidavit of Prime Contractor's Compliance)

This memorandum sets forth the reason for this court's order dismissing plaintiffs' exceptions and entering judgment for defendants. We shall examine plaintiffs' exceptions seriatim.

I. Plaintiffs' complaint was properly dismissed as their action was barred by Res Judicata and Collateral Estoppel.

Plaintiffs' action was properly dismissed by this court as it was barred by a prior judgment of this court in a matter involving the same issues and parties sharing the same taxpayer status. (Artis T. Ore, Inc., et al. v. City of Philadelphia, Redevelopment Authority of the City of Philadelphia and Stofflet & Tillotson, April term 1982, no. 2047, (decided April 22, 1982, Goodheart, J.) (No appeal taken)).

Plaintiffs assert that the doctrine of res judicata is not applicable in these proceedings. Plaintiffs claim that the judgment in the Ore case has no bearing on the instant case, and does not preclude plaintiffs from pursuing this action. Furthermore, plaintiffs claim that the Ore action was brought as a taxpayers' action, and therefore was a class action. Since Ore was a class action, as plaintiffs suggest, plaintiffs in the in-

stant case were not in the "class" and therefore cannot be bound by the judgment in Ore.

The issue that plaintiffs raise is whether a judgment in an action brought by a taxpayer in a representative capacity is res judicata as to other similarly situated taxpayers. A suit brought as a taxpayer action is technically classified as a class action. See Gericke v. Philadelphia, 353 Pa. 60, 44 A.2d 233 (1945); Penn Galvanizing Co. v. Philadelphia, 388 Pa. 370, 130 A.2d 511 (1957); Wilson V. Blaine, 262 Pa. 367, 105 A.555 (1918); Schlanger v. Borough of West Berwick, 261 Pa. 605, 104 A.764 (1918). See also, Goodrich-Amram 2d §2230(a):3. "A taxpayers' bill is a perfect example of a 'true' class action. Leech v. City of Meadville, 12 Crawford L.J. 139 (1972), citing Goodrich Amram; Bigler v. Penn Manor School Dist., 63 Lancaster L.Rev. 350 (1972)" Goodrich-Amram, supra, footnote 17.

In Gericke v. Philadelphia, 353 Pa. 60, 44 A2d 233 (1975), the court said "[a] taxpayer's bill is *essentially* a class bill and can be filed only in the common interest of all the taxpayers of the municipality, to prevent the wrongful expenditure of the money of the municipality or the wasting of its assets.' Schlanger v. West Berwick Borough, 261 Pa. 605, 608, 104 A.764. (Emphasis added.) 'A class bill, as its name implies, is a bill by several members of a class, on behalf of themselves and all others in the class, and no relief can be granted upon it, except upon a ground which is common to all the members of the class. (Citing cases).' Ashcom v. Westmont Borough, 298 Pa. 203, 208, 148 A.112, 114. See Lova v. Allentown, 28 Leh. L.J. 193 (1959). See also 44 C.J.S., §2154, P.L.E., Municipal Corporations §725.

"As such a taxpayer's bill must be filed in the name of and for the class. . . , for otherwise every taxpayer would have a separate right to file a bill in his own

name and right, and a multiplicity of suits and great confusion might result." Wilson v. Blaine, 262 Pa. 367, 105 A.555 (1918). The fundamental reason for granting standing to taxpayers to maintain suit against a public body is that otherwise a large body of governmental activity would be unchallengeable in the courts. (Faden v. Philadelphia Housing Authority, 424 Pa. 273, 227 A.2d 619 (1967)).

Class action as defined by Pa.R.C.P. 1701 "means any action brought by or against parties as representatives of a class until the court by order refuses to certify it as such or revokes a prior certification under these rules." Pennsylvania recognizes three types of class action — true, hybrid and spurious.[2] Examples of true class actions are a taxpayer's bill (Leech v. Meadville, supra; Bigler v. Penn Manor School Dist., supra, Goodrich-Amram §1701:3) and an action brought on behalf of the common interest of taxpayers in the municipality to prevent wrongful expenditures of money of the municipality or the wasting of its assets (Gericke v. Philadelphia, supra; Penn Galvanizing Co. v. Philadelphia, supra, Goodrich-Amram §1701:3; McMonagle v. Allstate Insurance Co., 227 Pa. Super. 265, 324 A.2d 414 (1974), footnote 9, Judge Cercone's opinion in support of order per curiam, aff'd. 460 Pa. 159, 331 A.2d 467 (1975).

Plaintiffs in the instant case label the Ore action a class action, and then seek to escape application of res judicata by undertaking to demonstrate that the Ore action was, in fact, not a class action. Plaintiffs con-

---

2. For a discussion of the three types of class action suits *see* Judge Cercone's opinion in McMonagle v. Allstate Insurance Co. 227 Pa. Super. 265, 324 A.2d 414 (1974) aff'd., 460 Pa. 159, 331 A.2d 467 (1975). See also Goodrich-Amram §1701:3, 4 Anderson, Pennsylvania Practice Rule 1701 (1981).

tend the Ore plaintiffs never moved to certify the action as a class action, and therefore plaintiffs in the instant case, not being in the "class," cannot be bound by the judgment in Ore.

The complaint in the Ore case was not styled as a class action, but rather as a taxpayer's action. "In a class action the complaint should be so titled and the pleadings so framed as to identify it as a class action and to give some indication of the class being represented, Wilson v. Blaine (supra)." Penn Galvanizing, 388 Pa. at _____, 130 A.2d at 515. Accord, Pa.R.C.P. 1704.

Rule 2002(b) of the Pa.R.C.P. states "a plaintiff may sue in his own name without joining as plaintiff or use-plaintiff any person beneficially interested when such plaintiff (1) is acting in a *representative* capacity, which capacity is disclosed in the caption and in the plaintiff's initial pleading." (Emphasis added.) In the Ore action plaintiffs brought suit in a representative capacity, i.e., taxpayers' status. The Ore case was recognized by this court as a taxpayers' action. See also Price v. Philadelphia Parking Authority, 422 Pa. 317, 221 A.2d 138 (1966).

A taxpayers' action is a suit or proceeding brought by one or more taxpayers, on behalf of themselves *and as representatives* of a class of taxpayers similarly situated within a taxing area, upon a ground which is common to all members of the class, and for the purpose of seeking relief from illegal or unauthorized acts of public bodies. In essence, a taxpayers' suit while representative in nature is distinguishable from class action suits. A suit may be brought as a taxpayers' suit without fulfilling all of the requirements of a class action suit. A taxpayers' suit is analogous to a class action, but not identical. In a taxpayers' suit *all* taxpayers are represented in the action. A taxpayers' suit determines a public right.

Taxpayer actions are based upon the theory that no relief can be granted except for that which is common to all other taxpayers. Standing is granted on the basis of taxpayer status, the class is definitional and determined by law. We find that the Ore action was a proper taxpayers' action. Furthermore, as a taxpayer action all other taxpayers are precluded from litigating similar issues.

Restatement (Second) of Judgments §41(1) (1982) provides that a "person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the judgment as though he were a party. Section 41(2) states that a "person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process.

To support a claim of res judicata the party asserting this defense must show a concurrence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. Stevenson v. Silverman, 417 Pa. 187, 208 A.2d 786, (1965) cert. denied, 382 U.S. 833, (1965). The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. Hochman v. Mortgage Finance Corp., 289 Pa. 260, 137 A.252 (1927). See also Callery v. Mun. Auth. of Township of Blythe, 432 Pa. 307, 243 A.2d 385 (1968). Applying these tests, we are compelled to conclude that identity of thing sued upon, identity of cause of action, identity of persons and parties to the action and identity of the quality or capacity of the parties suing or sued are identical in the Ore action and in the instant action. Therefore,

the doctrine of res judicata acts to bar plaintiffs in this action.

Furthermore, the doctrine of collateral estoppel applies to this action. The doctrine of collateral estoppel, by its nature, is a broader concept than res judicata. Collateral estoppel requires only the same issue of fact and same party or privy against whom defense is invoked. The cause of action need not be the same nor need the parties have balance of identity. Thompson v. Karastan Rug Mills, 228 Pa. Super. 260, 323 A.2d 341 (1974). See Makariw v. Rinard, 336 F.2d 333 (3rd Cir. 1964).

The instant case is apparently one of first impression in this jurisdiction. Numerous decisions from other jurisdictions, however, have established the principle that a judgment in an action brought by a taxpayer in a representative capacity is res judicata as to other similarly situated taxpayers.[3] Additionally

---

3. Alabama: Montgomery v. Walker, 154 Ala. 242, 45 So. 586 (1908); Tallassee v. State, 206 Ala. 169, 89 So. 514 (1921).

Alaska: Jefferson v. Greater Anchorage Area Borough, 451 P.2d 730 (1969).

Arizona: Stuart v. Winslow Elementary School Dist. No. 1, Navajo County, 100 Ariz. 375, 414 P.2d 976 (1966); El Paso Nat. Gas Co. v. State, 123 Ariz. 219 599 P.2d 175 (1979), cert. denied 445 U.S. 938 (1980).

Arkansas: Stevens v. Shull, 179 Ark. 766, 19 S.W.2d 1018 (1929); Ollis v. Piggott Junior Chamber of Commerce, 248 Ark. 725, 453 S.W.2d 410 (1970).

California: Price v. Sixth Dist. Agricultural Ass'n., 201 Cal. 502, 258 P. 387 (1927); Smith v. Los Angeles, 190 Cal. App.2d 112, 11 Cal. Rptr. 898 (2nd Dist. 1961); Rynsburger v. Dairymen's Fertilizer Co-op., Inc., 266 Cal. App.2d 269, 72 Cal. Rptr. 102 (4th Dist. 1968).

Connecticut: McLoud v. Selby, 10 Conn. 390 (1935); Terry v. Waterbury, 35 Conn. 526 (1869).

Florida: State ex rel. Walker v. Gessner, 157 Fla. 798, 26 So.2d 896 (1946); Young v. Miami Beach Imp. Co., ____ Fla.

many treatises have discussed the evolution of this principle. See, for example, 46 Am. Jur. 2d Judgments §578 (1969); 56 Am. Jur. 2d Municipal Corpo-

---

____, 46 So.2d 26 (1950); City of New Port Richey v. State ex rel. O'Malley, 145 So.2d 903 (Dist. Ct. App. 1962).

Georgia: Holman v. Bridges, 165 Ga. 296, 140 S.E. 886 (1927).

Illinois: Indiana Harbor Belt R.Co. v. Calumet City, 391 Ill. 280, 63 N.E.2d 369 (1945); Barrett v. City of Chicago, 11 Ill. App.2d 146, 136 N.E.2d 564 (1956).

Indiana: Simmons v. Woodward, 217 Ind.15, 26 N.E.2d 37 (1940).

Iowa: Cannon v. Nelson, 83 Iowa 242, 48 N.W.1033 (1891); C.W. Roland Co. v. Town of Carlisle, 215 Iowa 82, ____ N.W. ____ (1932).

Kansas: Sabin v. Sherman, 28 Kan. 289 (1882); Cline v. Angle, 216 Kan. 328, 532 P.2d 1093 (1975).

Kentucky: Home Constr. Co. v. Duncan, 24 Ky. L.Rep. 94, 68 S.W. 15 (1902); Rollins v. Board of Drainage Com'rs. of McCracken County for Mayfield Drainage Dist. No. 1, 281 Ky. 771, 136 S.W.2d 1094 (1939); Smith v. Campbell, ____ Ky. ____, 286 S.W.2d 532 (1955).

Louisiana: Bott v. Lakowsky, 154 La. 375, 97 So. 562 (1923); Robinson v. Weiner, 158 La. 979, 105 So. 35 (1925).

Maryland: Holt v. Moxley, 157 Md. 619, 147 A.596 (1929).

Massachusetts: Morgenelli v. Building Inspector of Canton, 7 Mass. App. Ct. 475, 388 N.E.2d 708 (1979).

Minnesota: Ahlguist v. Commonwealth Electric Co., 194 Minn. 598, 261 N.W. 452 (1935).

Mississippi: Williams v. DeSota County, 139 Miss. 78, 103 So. 812 (1925); Bank of Commerce & Trust Co. v. Commissioners of Tallahatchie Drainage Dist. No. 1, 157 Miss. 336, 128 So.91 (1930).

Missouri: Powell v. City of Joplin, 335 Mo. 562, 73 S.W.2d 408 (1934); Siebert v. Columbia ____ Mo. ____, 461 S.W.2d 808 (1970).

Montana: State v. Board of Com'rs. of Cascade County, 89 Mont. 37, 296 P.1 (1931).

New Jersey: Petition of Gardiner, 67 N.J. Super. 435, 170 A.2d 820 (1961); Roberts v. Goldner, 79 N.J. 82, 397 A.2d 1090 (1979).

rations, etc. §873 (1971); 74 Am. Jur. 2d Taxpayers' Actions §62 (1974); 50 C.J.S. Judgments §796 (1947); 18 E. McQuillin, Municipal Corporations, §52.50 (3rd ed. 1970); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction §4458 (1981); Annot., 20 A.L.R. 1133 (1922); Annot., 64 A.L.R. 1262 (1929).

"State courts . . . have been persuaded that a first taxpayer action may properly preclude a second

New Mexico: Floersheim v. Harding County, 28 N.M. 330, 212 P.451 (1922).

New York: People's Gas & E. Co. v. Oswego, 207 A.D. 134, 202 N.Y.S. 243 (1923), aff'd per curiam, 238 N.Y. 606, 144 N.E. 911 (1924).

North Carolina: Eaton v. Mooresville Graded Schools, 184 N.C. 471, 114 S.E. 689 (1922).

North Dakota: State ex rel. Davis v. Willis, 19 N.D. 209, 124 N.W. 706 (1910); Anderson v. Jeannotte, ___ N.D. ___ 96 N.W.2d 591 (1959).

Ohio: State ex rel. Atty. Gen. v. Cincinatti Gaslight & Coke Co., 18 Ohio St. 262, ___ N.E. ___ (1868).

Oklahoma: El Reno v. Cleveland-Trinidad Paving Co., 25 Okla. 698, 107 P.163 (1910).

Oregon: Rose v. Portland, 82 Or. 541, 162 P. 498 (1917); Kimbrough v. Smith, 255 Or. 123, 464 P.2d 646 (1970).

South Carolina: Davis v. West Greenville, 147 S.C. 448, 145 S.E. 193 (1928).

Tennessee: Lindsay v. Allen, 112 Tenn. 637, 82 S.W. 171 (1904).

Texas: McClesky v. State, 4 Tex. Civ. App. 322, 23 S.W. 518 (1893); Hodgkins v. Sansom, 135 S.W.2d 759 (Civ. App.. 1939); Hitchock v. Killeen, 553 S.W.2 22 (Civ. App. 1977).

Washington: Stallcup v. Tacoma, 13 Wash. 141, 42 P.541 (1895),

West Virginia: Gallaher v. Moundsville, 34 W.Va. 730, 12 S.E. 859 (1891).

Wisconsin: Delta Fish & Fur Farms v. Pierce, 203 Wis. 519, 234 N.W. 881 (1930).

Wyoming: Stratton v. City of Riverton, 74 Wyo. 379, 287 P.2d 627 (1955).

taxpayer action asserting the same grievance. This result may be supported by *analogy to class actions. . . ."* (footnotes omitted, Emphasis added) Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction §4458. (1981)[4]

"A judgment for or against a municipal corporation or its officers in a matter of general interest to all its citizens and taxpayers is ordinarily binding on the latter, although they are not parties to the suit, since every citizen and taxpayer is a real, although not a nominal, party to such judgment, and consequently a taxpayer cannot relitigate any of the questions which were litigated in the original action, at least in the absence of fraud or collusion. The general principle of class actions that a judgment in favor of or against the parties representing the general class is operative under the doctrine of res judicata, in favor of or against all who are thus represented, applies to litigation instituted by taxpayers. Accordingly, in a suit brought by citizens and taxpayers to determine a public right or a matter of public interest, all citizens and taxpayers are regarded as parties to the proceedings by representation and are bound by the judgment rendered therein. A judgment or decree upon the merits in a taxpayer's action is res judicata as to another taxpayer who was not a party to the record or the proceeding, and he cannot subsequently raise the same questions in a

---

4. Wright notes that "Since personal 'injury in fact' remains an element of federal standing decisions, federal courts are not likely to encounter this question frequently. [Furthermore] federal courts too should seriously consider the possibility of preclusion, not only in the few areas in which taxpayer actions are permitted but also in other areas in which the standing asserted in successive actions rests on highly similar and attenuated claims of personal impact. Wright, Jurisdiction §4458.

proceeding instituted by himself to effect the same result as the first action or proceeding. . . .

The reason for the general rule is that if this were not so, each citizen, and perhaps each citizen of each generation of citizens, would be at liberty to commence an action and to litigate the question for himself; and if a judgment against the county in its corporate capacity does not bind the taxpayers composing the county, then it would be difficult to imagine what efficacy could be given to such judgment. Strong considerations of public policy also require that after a bona fide and well-contested litigation by a taxpayer of a specific question concerning the validity of municipal action, the judgment entered should conclude all other taxpayers, they having been free to intervene, if they so chose, in the litigation. This rule is not based on statutory provisions; it is a rule of common law, although the rule sometimes prevails as a result of the application of specific statutory provisions.

Persons who were not parties to a former suit cannot be bound by a decree therein under the doctrine of virtual representation, unless it appears that the parties appearing as representatives therein had interests that were, in fact, similar to and consistent with those of the other members of the purported class." 74 Am. Jur. 2d Taxpayer's Actions §62 (1974) (footnotes omitted).
Accord, 18 E. McQuillin, Municipal Corporations §52.50 (3rd ed., 1970); 56 Am. Jur.2d Municipal Corporations, etc. §873 (1971); 50 C.J.S. Judgments §796(b), (1947).

In conclusion we find that the instant plaintiffs are precluded from instituting the same cause of action as to all issues litigated in the first suit, but also as to all issues or items that should have been raised or may have been raised in the first suit.

II. This court properly found that Stofflet & Tillotson's Bid contained in excess of 25 percent MBE participation.

Plaintiffs' Additional Exceptions are without merit; namely for two reasons: (1) the court was correct in applying the principles of res judicata and (2) if this court were to reach this issue, there are no grounds for reversing the decision in the Ore action or the present case.

Plaintiffs content that this court erred in the Ore case by finding that Uniland had a 15 percent participation as a joint venture in Stofflet & Tillotson and thus satisfied the MBE requirements of at least 25 percent Minority Business Enterprise participation. When added to 13 percent in subcontracts to undisputed MBE's, there is a total of 28 percent MBE participation in this bid.

Plaintiffs' contend that this court erred in finding that Stofflet & Tillotson's bid was based on 25 percent or more MBE participation is based on what can only be described as mathematical legerdemain. Plaintiffs maintain that Uniland Corp., Stofflet & Tillotson's MBE joint venture partner, will not have a full 15 percent participation in the Project if the anticipated 6 percent profit on the Project is realized. The essence of this argument is summarized at page 9 of their Brief on Exceptions as follows:

Based on a contract price of $12,324,000.00, Uniland's *participation in this contract* should be $1,848,600.00 to comply with MBE standards. If the job does produce a six percent profit, Uniland's *participation* would amount to $110,916.00 or a shortfall of approximately $1,738,000.00. Uniland's *participation* is less than 1 percent. (Emphasis added).

Plaintiffs' argument that "Uniland's participation is less than 1%" would make sense if the entire contract price of $12,324,000 were to be realized as profit. However, taking six percent of the contract price as the expected profit margin, the total price on the contract will be $739,440. If Uniland were to make $110,916 as plaintiffs suggest, this would in fact be a 15 percent participation in the profit leaving $628,524 or 85 percent of the profit for Stofflet & Tillotson. Plaintiffs' confusion lies in the fact that they use the term "participation" in two different senses in the same above quoted paragraph. The figure of $1,848,600 represents Uniland's 15 percent participation in the gross amount of the contract. Six percent of this amount yields $110,916 or six percent participation in the net amount of profits. Thus, Uniland's participation is 15 percent on all levels of the contract, gross amount and net profit and loss.[5]

III. The court's finding in Ore that the failure of Stofflet & Tillotson to execute Exhibit 1 was properly waived by the Redevelopment Authority of the City of Philadelphia.

In Ore, this court held that the admitted failure of Stofflet & Tillotson to execute the prime contractor's affidavit of compliance in the form attached to

5. It is noted that Uniland's 15 percent participation in the gross contract amount was an apparently important inducement to enter into the joint venture agreement with Stofflet & Tillotson. Ernest Edwards, President of Uniland Corp. testified:

"My company would be on the contract and would be able to get credit for the fifteen percent of the 12 and a half million, which is over $2,000,000 worth of construction activity which goes on my books so that I can say that I did x number of millions of dollars in construction volume, a year or two from now. Ore Transcript, April 22, 1982 at p. 239.

the bid as Exhibit I was of no consequence, since the information called for therein was contained elsewhere in the bid package submitted by Stofflet & Tillotson and furthermore, by signing the bid under oath, Stofflet & Tillotson represented that it had fully complied with all of the MBE requirements. Plaintiffs assert that certain language in the bid package required submission of an Exhibit I or in the alternative, a request for waiver in the form attached to the bid as Exhibit II and argue that this requirement was mandatory and could not be waived by the RDA.

The bid package documents however contain express provisions permitting the RDA to waive informalities in bids received when it deems such a waiver to be in the best interest of the City.

The Invitation for Bids states plainly that informalities or irregularities are not fatal to bids received by the RDA:

The Redevelopment Authority of the City of Philadelphia reserves the right to reject any and all bids or *to waive any informalities or irregularities in the bidding* when, in the opinion of the Authority, such rejection or waiver shall be to its interest or advantage. (p. 000202/2 emphasis added).

14. AWARD OF CONTRACT: REJECTION OF BIDS

(a) The Contract will be awarded to the responsible bidder submitting the lowest Bid complying with the conditions of the Invitation for Bids. The Bidder to whom the award is made will be notified at the earliest possible date. The Authority, however, reserves the right to reject any and all Bids and *to waive any informality in the Bids received* whenever such rejection or waiver is in its interest . . . (p. 00100-5/8 (Emphasis added.)

These provisions make clear that when a bid complies in substance with the Invitation, the RDA is vested with broad discretion to decide whether to waive informalities or irregularities found therein. In the absence of proof of fraud, collusion, bad faith or arbitrary action amounting to an abuse of discretion, a disappointed bidder may not call upon the courts to sit in review of municipal actions involving exercises of discretion with respect to the bidding process. Weber v. Philadelphia, 437 Pa. 179, 262 A.2d 297 (1970)[6]; see also, Pearlman v. Pittsburgh,

---

6. In this area of the law, certain principles are well settled and stem, in large measure, from judicial respect for the doctrine of separation of powers in government. First, it is to be presumed that municipal officers properly act for the public good (Robinson v. Philadelphia, 400 Pa. 80, 86, 161 A.2d 1,5 (1960); Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 457, 160 A.2d 539, 545 (1960). Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion, (Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 572, 109 A.2d 331, 334-35 (1954); Hyam, supra, 399 Pa. at 457, 160 A.2d at 545). Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and judicial discretion should not be substituted for *administrative* discretion (Goodman Appeal, 425 Pa. 23, 30, 227 A.2d 816, 820 (1967); Parker v. Philadelphia, 391 Pa. 242, 249, 147 A.2d 343, 347 (1958)). Fourth, if a municipality, in connection with competitive bidding, is empowered to do so, it may reject any and all bids in the absence of fraud, collusion, bad faith or arbitrary action (Highway Express Lines, Inc. v. Winter, 414 Pa. 340, 345, 200 A.2d 300, 302 (1964); R.S. Noonan, Inc. v. York School District, 400 Pa. 391, 396, 162 A.2d 623, 626 (1960); Straw v. Williamsport, 286 Pa. 41, 43, 132 A.804, 805 (1926); American Pavement Co. v. Wagner, 139 Pa. 623, 630-31, 21 A.160, 161 (1891)). Fifth, the requirement of competitive bidding for municipal contracts guards against 'favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts,

304 Pa. 24, 155 A.118 (1931); Wilson v. New Castle City, 301 Pa. 358, 152 A.102 (1930); Cain v. Winter, 72 D.&C. 2d. 64 (1975).

It was in reliance on this language that Michael R. Arno, Executive Director of the RDA testified that he had decided to waive the informalities found in Stofflet & Tillotson's bid. Based on the expressed authority to waive informalities reserved to the RDA in the contract documents, the waiver by the RDA was fully within its power, and this court was correct in rejecting the Ore plaintiffs' challenge to that power.

The Honorable Harry Takiff in Cain v. Winter, 72 D.&C. 2d 64 at p. 81-82 (1975) questioned:

Were these general instructions mandatory so as to disqualify the bid by reason of such deviations, such as would attach to the failure to supply a bid bond (Colella v. Allegheny County, 391 Pa. 103 (1958)); or the failure to execute the bid (Whitemarsh Twp. Auth. v. Finelli Bros., 408 Pa. 373 (1962)); or directory only and subject to waiver in the discretion of the Procurement Commissioner? An examination of the entire bid invitation, including the remaining general instructions as well as the conditions of bidding prompts the conclusion that these instructions did not rise to the level of statutory or ordinance requirements, deviation from which would require the voiding of the bid.

We conclude that the non compliance with the general instructions did not render the Stofflet &

---

and to secure the best work of supplies at the lowest price practicable . . .'; (Yohe v. Lower Burrell, 418 Pa. 23, 28, 208 A.2d 847, 859 (1965); Price v. Philadelphia Parking Authority, 422 Pa. 317, 332, 221 A.2d 138, 146 (1966))." (Emphasis in original.) Weber v. Philadelphia, 437 Pa. at 183, 262 A.2d at

Tillotson bid an unlawful one; rather it was one which was subject to administrative discretion. Further, the RDA in its Invitation for Bids, allowed for waiver of any informality when such waiver shall be in the RDA interest or advantage.

## CONCLUSION

Plaintiffs' exceptions to the findings and order of this court are dismissed. Furthermore, judgment is entered for defendants on such findings and order.